Debra BASSETT, doing business as Bassett Productions, Bassett Entertainment Corp., Plaintiffs–Appellants,

v.

MASHANTUCKET PEQUOT TRIBE, Mashantucket Pequot Museum & Research Center, Theresa Bell, Jack Campisi Defendants–Appellees.

Docket No. 98–9162

United States Court of Appeals, Second Circuit.

Argued: June 9, 1999

Decided: Feb. 28, 2000

---

Richard A. Goren, Framingham, MA (Ellen Rappaport Tanowitz, Rubin, Hay & Gould, P.C., Framingham, MA, on the brief), for Plaintiffs–Appellants,

David S. Williams, Norwich, CT (Elizabeth Conway, Brown, Jacobson, Tillinghast, Lahan & King, P.C., Norwich, CT, on the brief), for Defendants–Appellees.

* The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

Before: LEVAL and SOTOMAYOR, Circuit Judges, and POLLACK, District Judge.*

LEVAL, Circuit Judge:

Plaintiff Debra Bassett, doing business as Bassett Productions, appeals from the dismissal of her complaint against Defendants Mashantucket Pequot Tribe (the "Tribe"), Mashantucket Pequot Museum & Research Center (the "Museum"), Theresa Bell, and Jack Campisi. The complaint charged Defendants with copyright infringement, breach of contract, and various state-law torts. The United States District Court for the District of Connecticut (Christopher F. Droney, *Judge*) dismissed the copyright claims against the Tribe and the Museum [1] for lack of subject matter jurisdiction, dismissed the state-law claims against the Tribe pursuant to the doctrine of tribal immunity, and dismissed all of the claims against the non-tribal Defendants upon finding the Tribe to be an "indispensable party" under Fed.R.Civ.P. 19(b). We affirm the dismissal of the copyright claims against the Tribe, although for different reasons, and vacate and remand the dismissal of the claims against the non-tribal Defendants.

*Background*

A. *Events giving rise to this lawsuit.*

According to the allegations of the complaint: Plaintiff Debra Bassett operates a business, Bassett Productions, that produces films and television programs. Defendant Mashantucket Pequot Tribe is a federally recognized Indian tribe with a reservation located within the geographical boundaries of the State of Connecticut. Defendant Mashantucket Pequot Museum is a Connecticut corporation located on the Pequot Reservation.

In October 1994, Bassett met with representatives of the Tribe to discuss the

1. The complaint joined both the Tribe and the Museum under the label "the Pequots," charging both with copyright infringement without distinguishing between them.

possibility of producing a film for the Museum about the Pequot War of 1636–38. In November, Defendant Theresa Bell, acting individually and as a representative of the Tribe, signed a "confidential disclosure agreement" in which she agreed that all information received from Bassett Productions was proprietary, and was to be returned to Bassett Productions at its request. In May 1995, Defendant Jack Campisi, communicating with Bassett on behalf of the Tribe, advised her that the Tribe intended to hire her to produce the film, contingent on the negotiation of a satisfactory contract and the Tribe's acceptance of a script for the film.

In August 1995, Bassett Productions entered into a letter agreement with the Tribe (the "Letter Agreement") for the development and production of a film about the 1636–38 Pequot War. The Letter Agreement identified Bassett Productions as the "Producer" and the Tribe as the "Owner," but did not define these terms. It stipulated that Bassett Productions would "hire and supervise the development and writing of a screenplay by Keith Merrill and George Burdeau," and that the Tribe would "compensate" Bassett Productions for development costs according to an agreed schedule. It also stipulated that "at such time" that the Tribe approved the final draft of the screenplay, Bassett Productions would have exclusive rights to produce the film for exhibition at the·Pequot Museum.

Some time before October 30, 1995, Bassett had delivered to the Tribe a script that she herself had written, based on a "script scenario" she had developed with assistance from her associate Allan Eckert. The script was prominently marked on its first page, "© 1995 Bassett Entertainment Corporation."[2]

On October 30, 1995, Bassett received a notice from the Tribe terminating the Letter Agreement. The notice asserted that

Bassett had not "perform[ed] the contract as the parties anticipated."

Following the termination of the Letter Agreement, the Tribe continued to pursue the development and production of a film on the 1636–38 Pequot War for exhibition at the Museum. In October 1996, filming was completed on a motion picture entitled, "The Witness." Bassett asserts the Tribe intends to screen the film at the Museum "in the near future" as part of "an interstate-driven tourist attraction."

B. *Bassett's lawsuit and the district court's ruling.*

In September 1996, Bassett commenced this lawsuit in the United States District Court for the District of Connecticut. The complaint sought an injunction as well as other copyright remedies on the ground that the Tribe and the Museum used Bassett's copyrighted script without her consent or license in order to produce their own film; it further alleged that they breached the Letter Agreement, and that they committed various state-law torts resulting in injury to Bassett. It also charged Bell and Campisi with tortious interference with contract. The charge against Bell and Campisi was expanded in an amended complaint to allege that they infringed Bassett's copyrights in violation of federal law, while acting "on behalf of the Tribe" but "beyond the scope of authority" it could "lawfully bestow" on them.

In March 1997, Defendants moved to dismiss Bassett's complaint for lack of subject matter jurisdiction and for failure to exhaust tribal remedies. In their motion papers, Defendants argued (*inter alia*) that the court lacked federal question jurisdiction because Bassett's sole federal claim—her claim for copyright infringement—was "incidental to" her contract

---

2. In November, 1995, Bassett registered this script with the Copyright Office. In February 1997, Allan Eckert assigned to Bassett any interest he had in the "script scenarios" that they had created together, and in March, Bassett registered these scenarios as well.

claims, and therefore did not "arise under" federal law.

The district court granted Defendants' motion to dismiss the complaint, and Bassett appealed.

## Discussion

Bassett advances three arguments: (1) the district court was mistaken in its impression that the copyright infringement claims against the Tribe and the Museum are "merely incidental" to the contract claims and do not "arise under" federal copyright law for purposes of 28 U.S.C. § 1338(a); (2) the Tribe is not immune from suits in copyright brought by private parties, because the Copyright Act abrogated the sovereign immunity of the Indian Tribes; and (3) even if the claims against the Tribe were properly dismissed, the claims against the remaining defendants should proceed, because the Tribe is not an indispensable party under Rule 19(b).

I. *Whether the district court erred in ruling that Bassett's copyright claims against the Tribe and the Museum are "merely incidental" to her contract claims and therefore do not "arise under" federal law.*

■ 28 U.S.C. § 1338(a) states that federal district courts "shall" have exclusive, original jurisdiction "of any civil action arising under any Act of Congress relating to ... copyrights." It is well-established that not every complaint that refers to the Copyright Act "arises under" that law for purposes of Section 1338(a). *See, e.g., T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 824 (2d Cir.1964) (Friendly, *J.*) (noting that this principle traces to "precedents going back for more than a century"). In particular, "the federal grant of a ... copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law." *Id.* at 826. Here, the district court, relying on our discussion in dictum in

*Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 932–33 (2d Cir.1992), dismissed the claims based on the conclusion that Bassett's "copyright infringement claims ... do not 'arise under' federal copyright laws for purposes of 28 U.S.C. § 1338(a), but are merely incidental to [her] state law [contract] claims." Bassett contends that the court erred in dismissing her claims on the basis of *Schoenberg.* She argues that her copyright claims neither depend on nor result from claims for breach of contract. She further maintains that, because she sought a remedy expressly granted by the Copyright Act, her copyright claims do "arise under" the Act pursuant to the rule of *T.B. Harms.*

■ Whether a complaint asserting factually related copyright and contract claims "arises under" the federal copyright laws for the purposes of Section 1338(a) "poses among the knottiest procedural problems in copyright jurisprudence." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A], at 12–4 (1999) ("Nimmer"). *See also Schoenberg,* 971 F.2d at 931 ("The question of whether the breach of a contract licensing or assigning a copyright gives rise to a federal cause of action under the Copyright Act is a complex issue in a 'murky' area."). Such claims characteristically arise where the defendant held a license to exploit the plaintiff's copyright, but is alleged to have forfeited the license by breaching the terms of the licensing contract and thus to infringe in any further exploitation. *See id.*

Prior to our landmark decision in *T.B. Harms,* several district courts in the Second Circuit resolved the issue of jurisdiction under Section 1338 for "hybrid" claims raising both copyright and contract issues by attempting to discern whether the copyright issues constituted the "essence" of the dispute, or whether instead the copyright issues were "incidental to" the contract dispute. *See, e.g., T.B. Harms Co. v. Eliscu,* 226 F.Supp. 337, 340 (S.D.N.Y.1964) (the district court reasoned

that a suit "charging infringement ... which is in reality merely a suit to enforce a contract ... is not a case arising under the copyright laws") (internal quotation marks and citation omitted); *Muse v. Mellin,* 212 F.Supp. 315, 318 (S.D.N.Y.1962) (finding no federal jurisdiction even though the complaint sought an injunction under the Copyright Act, because "[t]he primary and controlling purpose of the complaint [was] to secure an interpretation" of ownership rights); *Cresci v. Music Publishers Holding Corp.,* 210 F.Supp. 253, 256 (S.D.N.Y.1962) (finding no federal jurisdiction because "the copyrights and the renewals in them are only incidentally involved in the claim of fraud").

That approach, however, left a class of plaintiffs who suffered copyright infringement bereft of copyright remedies. Plaintiffs whose federal lawsuits were dismissed for lack of subject matter jurisdiction on the ground that their copyright claims were "incidental to" their contract claims had no way either to obtain an adjudication of infringement or to obtain relief provided by the Copyright Act, because the Act confers exclusive jurisdiction over copyright claims on federal courts. *See* 28 U.S.C. § 1338. Such plaintiffs would be deprived of the injunctive relief, impoundment remedies, statutory damages, and attorneys fees provided by the Act. *See* 17 U.S.C. § 502 (injunctive relief); *id.* § 503 (impoundment of infringing articles); *id.* § 504 (damages); *id.* § 505 (costs and attorneys' fees). That approach had the added defect of requiring a court to make findings at the outset of the litigation that could not be discerned from the complaint but instead required a deep understanding of the dispute not usually gained until the case had been heard at trial.

In *T.B. Harms,* Judge Friendly recognized the complexity of the problem of defining when a case "arises under" the Copyright Act. In synthesizing Supreme Court cases that had considered the issue of federal jurisdiction in a variety of contexts, Judge Friendly established a test for

this circuit that focused on whether and how a complaint implicates the Copyright Act. The plaintiff in *T.B. Harms* sought a declaratory judgment that he was the sole owner of renewal copyrights. *See* 339 F.2d at 825. At issue was whether one of the defendants had previously assigned his interest in the copyrights to the plaintiff's agent, or whether this defendant had retained his interest and had validly assigned it at a later date to a second defendant. *See id.* at 824–25. No claim of infringement was asserted and no relief provided by the Copyright Act was sought. The district court dismissed the action for lack of subject matter jurisdiction on the ground that the "fundamental controversy" at issue concerned the execution of an assignment, not an alleged infringement of copyright. *See* 226 F.Supp. at 338. The court of appeals likewise found a lack of jurisdiction, but relied on quite different reasoning. *See* 339 F.2d at 824–25.

Judge Friendly began his analysis by examining Supreme Court precedent addressing the question when a federal court properly exercises jurisdiction under Section 1338, which creates jurisdiction in the federal courts in "any civil action arising under any Act of Congress relating to patents ... [and] copyrights," among others. 28 U.S.C. § 1338(a). He identified two lines of authority as particularly important. First, in *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916), Justice Holmes explained that a "suit arises under the law that creates the cause of action." *See T.B. Harms,* 339 F.2d at 826. According to Judge Friendly, Justice Holmes' interpretation of Section 1338 explained the exercise of federal jurisdiction "in a great many cases, notably copyright and patent infringement actions, both clearly authorized by the respective federal acts, and thus unquestionably within the scope of 28 U.S.C. § 1338." *Id.* (citation omitted). Judge Friendly observed that "in the many infringement suits that depend only on some point of fact and re-

quire no construction of federal law, no other explanation may exist." *Id.* Second, Judge Friendly discussed *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), in which the Supreme Court held that a claim created by state law might still "arise under" federal law "if the complaint discloses a need for determining the meaning or application of such a law." *Id.* at 827.

Synthesizing the Supreme Court authorities, Judge Friendly concluded that a suit "arises under" the Copyright Act if:

(1) "[T]he complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction . . .;" or,

(2) "[T]he complaint . . . asserts a claim requiring construction of the Act. . . ." *Id.* at 828.[3]

As the suit in *T.B. Harms* did not fall within any of these enumerated categories, the court found that it did not "arise under" the copyright laws for purposes of Section 1338 and that jurisdiction was therefore lacking. *See id.* at 825–28.

The *T.B. Harms* test differed significantly from the essence-of-the-dispute or merely-incidental test. The analysis under *T.B. Harms* turns on what is alleged on the face of the complaint, while the essence-of-the-dispute or merely-incidental test looks rather at what defense will be proffered. For example, if the complaint alleges copyright infringement or seeks an injunction under the Copyright Act, under *T.B. Harms* the federal court has jurisdiction; under the other test, in contrast, the court must ascertain whether the defendant will defend only by reference to state law matters, such as a claim of contractual entitlement, or will raise defenses based on the Copyright Act.

The *T.B. Harms* test avoids problems that result from the essence-of-the-dispute test. By rejecting reliance on whether the copyright claim could be characterized as "incidental" and instead focusing the inquiry under Section 1338 on whether a plaintiff's complaint "[was] for a remedy expressly granted by the Act," *T.B. Harms* ensured that plaintiffs who sought copyright remedies that depended on a prior showing of contractual entitlement would not be left without the remedies promised by the Copyright Act. *T.B. Harms*, 339 F.2d at 828. *T.B. Harms* also obviated the need for courts to determine at the outset of litigation whether copyright claims were incidental to contract claims—a difficult determination to make even after discovery and trial, and one that cannot be made reliably on the basis of the complaint alone.

Judge Friendly's solution to the problem posed by Section 1338 has been widely admired by the leading copyright scholars. *See, e.g.,* 3 Nimmer § 12.01[A], at 12–4 (noting that "[a]lthough no formulation [of Section 1338] can offer watertight compartmentalization consistent with all existing precedent, the best statement is found in Judge Friendly's thoughtful synthesis of the scope of federal jurisdiction [in *T.B. Harms* ]"); 2 William F. Patry, *Copyright Law and Practice* 1065, 1067 (1994) ("Patry") (applauding the "elegance" of the *T.B. Harms* approach, and observing that "Judge Friendly's opinion . . . has the important virtue of avoiding premature (and therefore potentially erroneous) judgments," because it places dispositive weight on elements that can be accurately ascertained from the face of the com-

---

**3.** On the basis of implications in *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165 (1942), and *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47 (1945), Judge Friendly spec- ulated that jurisdiction might also exist, "perhaps more doubtfully," in a third category of case "where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *T.B. Harms*, 339 F.2d at 828.

plaint).[4] The *T.B. Harms* test has been adopted by all the circuits that have considered the question whether a suit arises under the Copyright Act for purposes of Section 1338, if the disputed issues include non-copyright matters. *See Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1, 2 (1st Cir.1987) (noting that *T.B. Harms* is "[t]he most frequently cited test" and applying it)[5]; *Arthur Young & Co. v. City of*

4. We recognize that the literature includes some criticism of *T.B Harms,* but we believe it is easily answered. The primary criticism voiced is that the test has been applied by subsequent courts in a contradictory manner. *See* Jay S. Fleischman, Comment, *Swimming the Murky Waters: The Second Circuit and Subject–Matter Jurisdiction in Copyright Infringement Cases,* 42 *Buff. L. Rev.* 119, 125 (1994) ("Judge Friendly has, with a single paragraph, left a legacy of confusion that has led to a series of apparently irreconcilable judicial opinions and rules...."); Ryan M. Walsh, *The Maryland Survey: 1996–1997, Recent Decisions: The United States Court of Appeals for the Fourth Circuit,* 557 *Md. L. Rev.* 1178, 1185 (1998) ("Since *Harms,* federal courts ... have been unable to agree on the proper application of Judge Friendly's test."). We do not disagree that subsequent opinions have not been uniform. Some courts, purporting to follow *T.B. Harms,* have cited it for the proposition it rejected—that federal courts must look beyond the face of the complaint to ascertain whether the "primary and controlling issue" or "essence" of the dispute is a matter of federal copyright law or state contract law. *See, e.g., Felix Cinematografica, S.r.l. v. Penthouse International, Ltd.,* 671 F.Supp. 313, 315 (S.D.N.Y.1987) (holding that "[a]lthough plaintiff's complaint is framed entirely in terms of infringement" and although plaintiff sought an injunction, there was no subject-matter jurisdiction, because the " 'principal and controlling issue' " was the contract-law claim); *Stepdesign, Inc. v. Research Media, Inc.,* 442 F.Supp. 32, 34 (S.D.N.Y.1977) (applying *T.B. Harms* and dismissing for lack of jurisdiction, even though plaintiff sought an injunction, because "any finding of infringement would be clearly incidental to the main purpose of plaintiff's suit"). Nothing can be found in Judge Friendly's opinion to support the use of the "principal and controlling issue" test. Indeed, the opinion took pains to underscore that federal jurisdiction has been found proper "in the many infringement suits that depend only on some point of fact and require no construction of federal law." *T.B. Harms,* 339 F.2d at 826. Judge Friendly explained that this was because of the proposition drawn from Justice Holmes' opinion in *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916), that a "suit arises under the law that creates the cause of action." *See id.* If *T.B.*

*Harms* is to be faulted for the confusion found among subsequent opinions, it is not because of any fault in the test it stated, but rather because the test was explained in such terse, economical terms that it has been sometimes misunderstood and misapplied.

The other main criticism raised against the *T.B. Harms* standard is that by requiring federal courts to accept all cases in which the complaint seeks a remedy provided by the Copyright Act or raises a claim requiring interpretation of the Act, it might "open the floodgates," drowning federal courts in the "litigation of cases that are at heart contract disputes." Amy B. Cohen, *"Arising Under" Jurisdiction and the Copyright Laws,* 44 *Hastings L.J.* 337, 373 (1993). We believe this criticism is greatly exaggerated. The *T.B. Harms* opinion was written in 1964. Nearly thirty years passed before *Schoenberg.* We are aware of no evidence that district courts in the Second Circuit were overwhelmed during these thirty years by copyright suits in which only contract or ownership issues were disputed. More importantly, while the *T.B. Harms* standard undoubtedly causes federal courts to adjudicate more cases than they would if federal courts dismissed the suits seeking copyright remedies in which the only defense is contractual entitlement, this is necessary to the enforcement of the Copyright Act. As only a federal court can adjudicate a claim of infringement and award copyright remedies, to deny jurisdiction because the defendant will contest only contract issues is essentially to deny plaintiff's claim.

Furthermore, there is a built-in check on plaintiffs who seek to use Section 1338 as a means of obtaining federal jurisdiction over a purely contractual dispute by inappropriate or bad-faith pleading of a copyright claim. This is the risk that, once the federal court dismisses the copyright claim, it may decide to refuse supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c).

5. One writer claims that in *Royal,* the First Circuit adopted the principal-and-controlling-issue or essence-of-the-dispute standard rejected in *T.B. Harms. See* Cohen, *supra,* note 4, at 366–69. It is not so clear this is correct. The only copyright-related remedies sought in the complaint were a declaratory judgment of plaintiff's co-ownership of the copyright and damages for failure to pay contractual royal-

*Richmond,* 895 F.2d 967, 969–70 (4th Cir. 1990) ("Judge Friendly, in *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964), set out what has remained the definitive jurisdictional test for copyright cases...."); *Gibraltar, P.R., Inc. v. Otoki Group, Inc.,* 104 F.3d 616, 619 (4th Cir.1997) (citing *T.B. Harms* ); *Goodman v. Lee,* 815 F.2d 1030, 1031 (5th Cir.1987) (adopting the *T.B. Harms* test); *Vestron, Inc. v. Home Box Office Inc.,* 839 F.2d 1380, 1381 (9th Cir.1988) ("We have settled on Judge Friendly's formulation of copyright jurisdiction law as our test...."); *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 584 (9th Cir.1993) (same); *MCA Television Ltd. v. Public Interest Corp.,* 171 F.3d 1265, 1269 (11th Cir.1999) ("In *Sullivan,* we cited with approval Judge Friendly's articulation of the standard for jurisdiction under 28 U.S.C. § 1338 ....")(citing *Sullivan v. Naturalis, Inc.,* 5 F.3d 1410, 1412 (11th Cir.1993)).

Nearly thirty years after the *T.B. Harms* decision, a panel of this court in *Schoenberg* undertook in dictum [6] to state the test for determining the existence of Section 1338 jurisdiction in cases alleging violations of the Copyright Act resulting from breach of contract. The plaintiff, an author, alleged that he had licensed the defendant, a publisher, to publish plaintiff's work. The license obligated the defendant to publish within six months of plaintiff's delivery of the manuscript, to promote and market the work, and to license foreign language editions. According to plaintiff's allegations, the publisher breached numerous obligations of the license. As a result of these failures, plaintiff claimed that the license was terminated and that defendant's further publication of the work constituted an infringement. Although the appeal related to a different

ties. The court first cited *T.B. Harms* as the "most frequently cited test." 833 F.2d at 2. As the complaint neither sought a remedy under the Act, nor required construction of the Act, the court concluded based on the *T.B. Harms* test that there was no jurisdiction under Section 1338. *See id.* at 3. Then, referring to a "generic obligation" to decide the question of jurisdiction "by focusing on the nature of the principal claim asserted by the plaintiff," the court concluded that the claim "in its very nature and essence, is one for breach of contract." *Id.* at 4. This was consistent with the teaching of *T.B. Harms* that the issue of jurisdiction is to be resolved by analysis of what is sought by the complaint, rather than by focusing on what issues the defendant will contest. It is true the opinion cited authorities that either asserted or followed the principal-and-controlling-issue test. *See id.* (citing, *inter alia, Combs v. Plough, Inc.,* 681 F.2d 469 (6th Cir.1982) (per curiam)). But in view of the fact that the opinion was merely giving cumulative reasons for reaching a result, the inference cannot properly be drawn that the First Circuit looks to the issues in dispute, rather than the remedy sought in the pleading.

**6.** The decision in *Schoenberg* did not depend in any way on whether the case involved a proper exercise of copyright jurisdiction or on the test for making that determination. *Schoenberg* was an appeal brought by an attorney who had been held in civil contempt and subjected to sanctions by reason of his conduct in representing a defendant in the underlying lawsuit. *See* 971 F.2d at 927–30. The court held that the contempt and sanctions should be vacated because the attorney had not been afforded notice of the charge or an opportunity to defend against it. *See id.* at 934–35. The court also overturned sanctions imposed on the attorney for seeking a mandamus to compel the district court to allow him to file a motion to dismiss, ruling that the district court abused its discretion by forbidding him to file the motion. *See id.* at 935–36.

It is true the attorney had argued that the sanctions imposed on him could not be upheld because the district court lacked jurisdiction under 28 U.S.C. § 1338 to entertain the underlying case, *see id.* at 927, 930, but we rejected that argument. We concluded that it was irrelevant whether the district court lacked jurisdiction to adjudicate the underlying case, as the district court had power to hold a litigant in contempt, and we had power to hear the appeal, even if it would ultimately be determined that the district court lacked jurisdiction over the lawsuit. *See id.* at 934. The panel's undertaking to elucidate the standard for determination of copyright jurisdiction under Section 1338 was a digression that had no bearing on the resolution of any issue decided by the appeal.

issue,[7] the opinion undertook to state "the appropriate test under the *T.B. Harms* paradigm, for determining whether a suit 'arises under' the Copyright Act when it alleges infringement stemming from a breach of contract." *Schoenberg*, 971 F.2d at 932.

The opinion acknowledged that [i]n *T.B. Harms*, Judge Friendly wrote that, "an action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act," and that "[b]ecause Schoenberg is seeking damages for the alleged infringement as well as an injunction against future infringements, his complaint on its face asserts a claim 'arising under' the Copyright Act." *Id.* at 931. It observed, however, that notwithstanding the *T.B. Harms* formulation, some district courts had "looked beyond the complaint in order to determine whether the plaintiff was really concerned with the infringement of his copyright, or, alternatively, was, in fact, more interested in" free enjoyment of his property or other non-copyright issues. *Id.* at 932 (citing *Berger v. Simon & Schuster*, 631 F.Supp. 915, 919 (S.D.N.Y.1986)). Other courts, it noted, had adopted the even "broader proposition that no claim arises under the Copyright Act whenever an infringement would necessarily result from the breach of a contract that licensed or assigned a copyright." *Id.* at 931 (citing *Felix Cinematografica*, 671 F.Supp. at 315 and *Bear Creek Prods., Inc. v. Saleh*, 643 F.Supp. 489, 492 n. 9 (S.D.N.Y.1986)).

In undertaking to reconcile the varying approaches of those district court opinions (and perhaps concluding that the authority of *T.B. Harms* extended only to disputes over copyright ownership and not to hybrid copyright/contract claims), *Schoenberg* created a new, complex three-step test; the first step of the test was precisely that which *T.B. Harms* had rejected— whether the claim for copyright remedies is " 'merely incidental' " to a determination of contract rights. *See id.* The opinion declared that in hybrid copyright and contract cases Section 1338 jurisdiction should be analyzed in the following manner:

A district court must first ascertain whether the plaintiff's infringement claim is only "incidental" to the plaintiff's claim seeking a determination of ownership or contractual rights under the copyright.... If it is determined that the claim is not merely incidental, then a district court must next determine whether the complaint alleges a breach of a condition to, or a covenant of, the contract licensing or assigning the copyright.... [I]f a breach of a condition is alleged, then the district court has subject matter jurisdiction.... But if the complaint merely alleges a breach of a contractual covenant in the agreement that licenses or assigns the copyright, then the court must undertake a third step and analyze whether the breach is so material as to create a right of rescission in the grantor. If the breach would create a right of rescission, then the asserted claim arises under the Copyright Act.

*Id.* at 932–33 (citations omitted).

We believe for a number of reasons that the *Schoenberg* test is unworkable.[8] At the outset, it overlooks that, because the Copyright Act gives federal courts *exclusive* jurisdiction to enforce its provisions, *see* 28 U.S.C. § 1338, a plaintiff who is denied access to a federal forum on the theory that his copyright claims are incidental to a contract dispute is thereby absolutely denied the benefit of copyright remedies. Such a denial of copyright remedies undermines the Act's capacity to protect copyright interests. A plaintiff with

---

7. *See supra* note 6 and accompanying text.

8. The test has been severely criticized in the copyright scholarship. *See, e.g.,* 2 Patry at 1073 (suggesting that "the *Schoenberg* test has serious drawbacks that *T.B. Harms* did not");

Cohen, *supra* note 4, at 363, 365, 374 (arguing that the "principal and controlling issue" test adopted by *Schoenberg* suffers from "serious flaws").

meritorious copyright claims and entitlement to the special remedies provided by the Act is deprived of these remedies merely because the first hurdle of proving entitlement is a showing of a contractual right.[9]

A second problem with the *Schoenberg* test is that it is vague. *Schoenberg* characterizes the first part of its test in two ways: whether "the 'essence' of the plaintiff's claim" is in contract or copyright, *id.* at 933, or whether the "infringement claim is only 'incidental' to the plaintiff's claim seeking determination of ownership or contractual rights under the copyright," *id.* at 932. The meaning of either of these phrases is difficult to discern. At one juncture, *Schoenberg* suggests that the focus of inquiry should be on the plaintiff's motivations ("whether the plaintiff was really concerned with the infringement of his copyright or, alternatively, was, in fact, more interested in whether he would be allowed to enjoy his property free from the contract claims of the defendant"). *Id.* at 932. District courts applying the "only

incidental" test, in turn, have construed it in various other ways. *See Athanasius–Design v. Cumberland Homes Ltd.,* No. 96 C 6764, 1997 WL 176448, at *3–4 (N.D.Ill. Apr.4, 1997) (adopting the *Schoenberg* test and noting: (1) that determining if the copyright claim is incidental (prong one) is "a task easier said than done," and (2) that determining if the complaint alleged a breach of a condition or of a covenant (prong two) is "no small feat" because, *inter alia,* the allegations about the contract contained in the complaint were so cursory).[10]

The *Schoenberg* test suffers from other defects as well. Because the analysis under *Schoenberg* is based more on the defense than on the demands asserted in the complaint, the plaintiff's attorney can have no way of telling whether the action should be filed within the exclusive jurisdiction of the federal court or in state court.[11] Furthermore, the complaint will not necessarily reveal whether its claim of infringement and prayer for copyright remedies is "inci-

**9.** Ironically, under the *Schoenberg* test, the more clear it is that plaintiff is entitled to copyright remedies (assuming plaintiff prevails on the disputed contract issues), the less likely it is that plaintiff will be accorded those remedies. This can be seen by considering two hypothetical cases, identical in that each defendant claims entitlement to exploit the copyright under a license, and each plaintiff claims the defendant forfeited the license by breaching the contract terms. In the first case, the defendant has no defense other than its contractual right; it concedes that, if plaintiff prevails on the contract issue, plaintiff is entitled to the copyright remedies sought in the complaint. In the second case, the defendant asserts, in addition to its contract defense, (a) that the work is not original as required by the Copyright Act, *see* 17 U.S.C. § 102(a); (b) that the author's assignment to plaintiff was void for failure to conform to the requirements of the Copyright Act, *see* 17 U.S.C. §§ 201–205; (c) that Defendant's work is not "substantially similar" to plaintiff's work, *see, e.g., Hamil Am., Inc. v. GFI,* 193 F.3d 92, 99 (2d Cir.1999); and (d) that defendant's work should be considered "fair use," *see* 17 U.S.C. § 107.

In the first case, because the only disputed issue is contractual, the court might conclude that the copyright claims are merely "inciden-

tal" and dismiss the case. In the second case, because issues of copyright law are in dispute, the court will not dismiss. Thus, the greater the likelihood that plaintiff will be found entitled to the copyright remedies sought in the complaint, the less likely it is that he will receive them.

**10.** *See, also., USAR Sys., Inc. v. Brain Works, Inc.,* 897 F.Supp. 163, 166 (S.D.N.Y.1995) (infringement claim is "incidental to" a claim for breach where "an adequate remedy [for the infringement] would be to give the parties their expected benefit from the bargain—to enforce the terms of the contract as to performance"); *Living Music Records,* 827 F.Supp. at 980 (infringement claim is "incidental to" a claim for breach where "resolution of the infringement claim is only a necessary consequence of determining the contractual rights of the parties").

**11.** *See* Cohen, *supra* note 4, at 374 (arguing that a major problem with "principal and controlling issue" tests, such as *Schoenberg,* is that "a party planning to file suit remains unable to predict whether or not the case belongs in federal court").

dental to" a contract dispute. Indeed, it might not mention the assertedly forfeited license at all. Instead, it might simply state that the defendant is infringing plaintiff's copyright and demand an injunction, leaving it to the defendant's answer to claim justification in the license (to which the plaintiff plans to reply that the defendant's license was terminated as a result of its breach.) A court examining such a complaint would have no idea whether the "essence" of plaintiff's claim would turn out to be a matter of contract, much less whether plaintiff's "real[ ] concern[ ]" lay in the infringement, or whether plaintiff was "more interested" in peaceful "enjoy[ment of] his property." *Schoenberg*, 971 F.2d at 932.

Nor can the court necessarily rely on the defendant to bring the question of subject matter jurisdiction promptly to its attention. When a complaint raises copyright issues, the defendant, like the plaintiff, may think it desirable to have them adjudicated in federal court, rather than entrust them to a state court, which has no experience with the Copyright Act. The consequence may well be that the federal court will not discover the predominance of contract issues, and consequently its own supposed lack of jurisdiction under *Schoenberg*, until well into trial; indeed,

the discovery may not be made until the party that lost at trial (perhaps even the plaintiff) argues on appeal, for the first time, that the copyright issues were incidental and that the court therefore lacked subject matter jurisdiction.

Furthermore, even if the complaint sets forth in full the allegations relating to the license, and the defendant promptly moves to dismiss, the *Schoenberg* test requires the court to make complex factual determinations relating to the merits at the outset of the litigation—before the court has any familiarity with the case. Ascertaining what are a plaintiff's principal motives in bringing suit, and what issues will loom largest in the case, may well require extensive hearings and fact finding. The need for such fact finding recurs at each stage of *Schoenberg*'s three-step formula. Thus, if a court finds that a copyright claim is not "merely incidental to" a contract claim (step one), it must still determine whether the contractual term alleged to have been breached was in the nature of a covenant or a condition (step two). And if it finds that the alleged breach was of a covenant, the court must next determine "whether the breach is so material as to create a right of rescission," 971 F.2d at 933, failing which the case must be dismissed (step three).[12] This third inquiry in particular,

---

**12.** The *Schoenberg* opinion appears to have misunderstood the authorities on which it relied. The opinion cited *Costello Publishing Co. v. Rotelle*, 670 F.2d 1035, 1045 (D.C.Cir. 1981), and the reference in *Costello* to 3 Nimmer § 10.15 (1980 ed.). *See Schoenberg*, 971 F.2d at 932. *Schoenberg* stated that,

> [T]he appropriate test ... for determining whether a suit "arises under" the Copyright Act when it alleges infringement stemming from a breach of contract, was enunciated in *Costello* .... According to *Costello*, a district court must determine whether the complaint alleges a breach of a condition to, or a covenant of, the [license]. If a breach of a condition is alleged, then the district court has subject matter jurisdiction.... However, if the complaint merely alleges a breach of a covenant ... then the court must next determine whether the breach is so material that it created a right of rescission in the grantor.

*Id.* (citations omitted). *Costello*, however, was addressing an entirely different question. The question in *Costello* was whether a counterclaim was properly dismissed for failure to join Talbot Press as an indispensable party. *See Costello*, 670 F.2d at 1038–39. The theory of the counterclaim was that Talbot Press forfeited its license by breach of the license terms and that plaintiffs, whose right to publish the disputed text was derivative of Talbot's, therefore had no right to publish. *See id.* at 1039–45. The court of appeals, noting that copyright infringers are jointly and severally liable and that a suit for infringement is thus not subject to dismissal for failure to join an indispensable party, ruled that the district court should have determined whether the counterclaim alleged copyright infringement before dismissing it. *See id.* at 1042–45. The reason to ascertain whether the counterclaim effectively alleged copyright infringement by Talbot was to enable the district court to

which entails an assessment of the importance of the particular covenant, as well as the seriousness of the breach, raises questions that are not appropriately, easily or reliably answered at the start of litigation.

Finally, *Schoenberg* failed to recognize that in deviating from the test explained in *T.B. Harms*, it was failing to follow the governing Supreme Court authority on which *T.B. Harms* relied. *Schoenberg's* reliance on whether the disputed issues focus on matters of contract ownership rather than copyright cannot be reconciled with Justice Holmes' formulation in *American Well Works* that a "suit arises under the law that creates the cause of action." 241 U.S. at 260, 36 S.Ct. 585. The test, furthermore, is at odds with the well-established approach to federal question jurisdiction, pursuant to which jurisdiction is determined by ascertaining whether the plaintiff's complaint asserts a right under federal law. *See, e.g., Taylor v. Anderson,* 234 U.S. 74, 75, 34 S.Ct. 724, 58 L.Ed. 1218 (1914) ("[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration. . . ."); *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913) (Holmes, *J.*) ("[T]he party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under'

the patent or other law of the United States by his declaration or bill."); *cf. Dery v. Wyer,* 265 F.2d 804, 808 (2d Cir. 1959) ("[t]he sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action.").

For the reasons discussed above, we conclude that, for claims of infringement arising from, or in the context of, an alleged contractual breach, this circuit's standard for determining jurisdiction under Section 1338 is furnished by *T.B. Harms,* and not by *Schoenberg.*[13] When a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked. *See T.B. Harms,* 339 F.2d at 828.

■ Applying the *T.B. Harms* standard to this case leads us to conclude that Bassett's copyright claims "arise under" the Copyright Act for purposes of Section 1338. Unlike the complaint in *T.B. Harms,* the complaint in this case alleges that the defendants, without authority, used plaintiff's copyrighted script to produce a new film intended and advertised for imminent exhibition. The amended complaint alleged copyright infringement and sought "a remedy expressly granted by the Act," *T.B. Harms,* 339 F.2d at 828, specifically, an injunction against further infringement of Bassett's copyrighted script. Because the complaint alleges the

---

determine whether the counterclaim could be dismissed for failure to join Talbot. The *Costello* court never *considered* whether a claim that alleges copyright infringement stemming from breach of contract "arises under" a federal court's copyright jurisdiction—much less held that this jurisdictional question should be resolved by reference to the test proposed in *Schoenberg.*

Similarly, the passage in Nimmer that *Costello* cited—which was the original source of the condition/covenant distinction—did not deal with the question of subject matter jurisdiction. It too discussed a wholly different matter: whether a breaching licensee forfeited its rights under the license, which might in some circumstances turn on whether the term

breached was a condition or a covenant. *Cf.* 3 Nimmer § 10.15[A], at 10–120 to 10–125 (section entitled "Consequences of Violation of Assignment or License Provisions"). The treatise nowhere suggested that this consideration should serve as the basis of a federal court's jurisdictional inquiry in construing 28 U.S.C. § 1338.

*Schoenberg's* reliance on *Costello* and Nimmer is thus misplaced. These authorities simply did not assert the propositions for which *Schoenberg* cited them.

**13.** This portion of the opinion has been circulated among all the active judges of the court, and all have expressed agreement.

defendants violated the Copyright Act and seeks the injunctive remedy provided by the Act, under the rule of *T.B. Harms*, the action falls within the jurisdictional grant of Section 1338. The district court's contrary holding was in error.[14]

## II. *Whether the Tribe is immune from suits in copyright brought by private parties.*

The Tribe contends that, even if the court has federal question jurisdiction over the copyright claims under Section 1338, the Tribe's sovereign immunity from suit bars the court from adjudicating them. Bassett maintains that, to the extent the Tribe enjoys such immunity, it implicitly waived it by participating in the interstate, nongovernmental, commercial activities that gave rise to this lawsuit. We agree with the Tribe's contention, reject Bassett's, and therefore affirm on other grounds the district court's judgment dismissing the copyright claims against the Tribe.

It is by now well established that Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers. *See, e.g., Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940). It is also well established that Congress possesses plenary control over tribal sovereignty, and therefore is "always ... at liberty to dispense with ... tribal immunity or to limit it." 498 U.S. at 510, 111 S.Ct. 905; *see, e.g.,* 25 U.S.C. § 450f(c)(3) (abrogating tribal immunity in the context of certain mandatory liability insurance policies provided for tribes by the Department of Health and Human Services).

In *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), the Supreme Court held that congressional abrogation of tribal immunity, like congressional abrogation of other forms of sovereign immunity, "cannot be implied but must be unequivocally ex-

**14.** Indeed this case serves as an excellent example of the shortcomings of the *Schoenberg* test. Plaintiff alleges entitlement to an injunction provided by the Copyright Act. If the case is dismissed because of the court's perception that the copyright claim is "incidental to" a dispute about contractual rights, plaintiff will have no opportunity to receive either an adjudication of infringement or copyright remedies from the state courts.

The scenario most often analyzed under the *Schoenberg* test is one in which a plaintiff owns a copyright and undisputedly assigns or licenses defendant who allegedly breaches the terms of the contract by, for example, failing to pay royalties. Plaintiff then claims the license is terminated and that the defendant infringed plaintiff's copyright through unauthorized, continued use of the protected material after the breach. *See, e.g., Living Music Records, Inc.,* 827 F.Supp. at 980–81 (declining jurisdiction over copyright infringement claim based on allegations that defendant failed to pay royalties under a license agreement permitting it to make and sell copies of plaintiff's musical recordings). Here, however, plaintiff disputes that the Letter Agreement constituted any type of transfer, license

or assignment of her copyrighted script. It is also unclear under the Letter Agreement, depending on what evidence the defendants may proffer, whether the plaintiff's script could be considered a "work made for hire." *See* 17 U.S.C. § 201(b). The *Schoenberg* test does not direct the district court's attention to whether and when a dispute concerning the meaning and scope of a license "asserts a claim requiring construction of the Act," *T.B. Harms,* 339 F.2d at 828, and the district court failed to address this issue at all in its opinion dismissing the copyright claims. Similarly, the district court did not address whether any breach or failure involved a "condition to, or a covenant of" the Tribe's right to use or own plaintiff's copyrighted script in a film, *Schoenberg,* 971 F.2d at 932, (step two of the *Schoenberg* test). In short, both the district court and we are ill-equipped to make the judgments called for by the *Schoenberg* test at the early stage of the litigation: whether the copyright concerns are in fact incidental; whether contractual understandings were breached; whether these breaches were of conditions or covenants; if the latter, whether the breaches were of sufficient importance to justify rescission or forfeiture; and whether the claim requires construction of the Act.

pressed." *Id.* at 58, 98 S.Ct. 1670 (internal quotation marks and citations omitted). The plaintiff in *Santa Clara Pueblo*, a Pueblo member, sued the tribe and its governor alleging that a tribal ordinance violated Title I of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(8) (the "ICRA") (guaranteeing tribal members the equal protection of the laws of their tribe). *See id.* at 51, 98 S.Ct. 1670. The Supreme Court ruled that the suit was barred by the tribe's immunity because Congress had not explicitly abrogated this immunity in the ICRA. *See id.* at 58–59, 98 S.Ct. 1670. "Nothing on the face of Title I of the ICRA," the Court reasoned, "purports to subject tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief." *Id.* at 59, 98 S.Ct. 1670. We have since applied the rule of *Santa Clara Pueblo* in this circuit. *See Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542, 545–46 (2d Cir.1991) (holding that the Seneca Nation is immune from suit under a 1875 Act of Congress regulating the lease of tribal lands because the Act "fails to unambiguously express Congress' intent to subject the Nation to lawsuits").

In the recent case of *Kiowa Tribe v. Manufacturing Techs., Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), the Supreme Court clarified that a tribe's immunity extends to its off-reservation commercial activities. *See id.* at 758–60, 118 S.Ct. at 1705. *Kiowa Tribe* involved a suit against the Kiowa for default on a promissory note obligating the tribe to make certain payments outside the boundaries of its reservation. *See id.* at 752–54, 118 S.Ct. at 1702. The Supreme Court, reversing the Oklahoma Court of Appeals, held that the tribe was immune from the suit even though the contract at issue implicated the tribe's off-reservation commercial conduct. *See id.* at 758–60, 118 S.Ct. at 1705. The Court expressly declined to confine a tribe's sovereign immunity to its governmental and/or on-reservation activities, reasoning that it was for Congress, not the judiciary, to adjust the boundaries of tribal immunity. *See id.* at 752–60, 118 S.Ct. at 1702–05. Since the Court's precedents had previously sustained tribal immunity without drawing distinctions based on where contested tribal activities occurred or whether they were governmental or commercial in nature, the Court would not now begin to draw such distinctions. *See id.* at 758–60, 118 S.Ct. at 1705.

■■■■ Applying *Santa Clara Pueblo* and *Kiowa Tribe* to this dispute convinces us that the Tribe is immune from suit on Bassett's copyright claims. Nothing on the face of the Copyright Act "purports to subject tribes to the jurisdiction of the federal courts in civil actions" brought by private parties, *Santa Clara Pueblo*, 436 U.S. at 59, 98 S.Ct. 1670, and a congressional abrogation of tribal immunity cannot be implied, *see id.* at 58, 98 S.Ct. 1670; *see also Fluent*, 928 F.2d at 545–46. While Bassett contends that the Tribe implicitly waived its immunity by entering a contract that concerned off-reservation commercial activities, *Kiowa Tribe* makes clear that tribal immunity extends to these activities, and that a tribe does not waive its immunity merely by participating in them. *See* 523 U.S. at 752–54, 758–60, 118 S.Ct. at 1702, 1705; *see also Oklahoma Tax Comm'n*, 498 U.S. at 509, 111 S.Ct. 905 (noting that a tribe's waiver of its own immunity must be "clear"). Bassett also maintains, citing our decision in *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174 (2d Cir.1996), that the Copyright Act is a federal statute of "general application [and therefore] presumably applies to Indian Tribes." *Id.* at 179. However, the fact that a statute applies to Indian tribes does not mean that Congress abrogated tribal immunity in adopting it. *See, e.g., Florida Paraplegic Assn., Inc. v. Miccosukee Tribe*, 166 F.3d 1126, 1129–33 (11th Cir. 1999) (holding that the Americans with Disabilities Act applies to Indian tribes, but that the Act does not abrogate tribal immunity, and therefore that private entities may not sue tribes under the Act); *cf. Kiowa Tribe*, 523 U.S. at 754–56, 118 S.Ct.

at 1703 ("To say substantive state laws apply to off-reservation conduct . . . is not to say that a tribe no longer enjoys immunity from suit.").

For the foregoing reasons, we hold that the Tribe is immune from suit on Bassett's copyright claims. We therefore affirm the district court's dismissal of these claims, albeit on different grounds.

III. *Whether the district court abused its discretion in finding that the Tribe is an indispensable party to the action.*

The district court, finding the Tribe to be an "indispensable party," dismissed all the claims against the remaining Defendants pursuant to Fed.R.Civ.P. 19(b). Federal Rule of Civil Procedure 19(b) states in relevant part that "[i]f a person [to be 'joined if feasible' pursuant to Fed. R.Civ.P. 19(a)(1)-(2) ] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). Rule 19(b) then enumerates several factors to guide the court's inquiry as to whether a party is in fact "indispensable." *See* Fed.R.Civ.P. 19(b). In this case, the significant factors are whether the absent party might be prejudiced by a judgment rendered in its absence, and whether plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Upon considering Bassett's claim to enjoin the Museum from further infringing her copyrights, we conclude there is no basis for finding the Tribe to be an "indispensable party." Assuming Bassett's copyright is infringed by the showing of the film at the Museum, dismissal would completely deprive Bassett of the opportunity to prevent further infringement. *See, e.g., Costello Publishing Co. v. Rotelle,* 670 F.2d 1035, 1043 (D.C.Cir.1981) ("Courts have long held [that] in . . . copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. . . . Since joint tortfeasors are jointly and severally liable, the victim . . . may sue . . . as few of the alleged wrongdoers as he chooses; those left out of the lawsuit . . . are not indispensable parties.") (citations omitted); *Wells v. Universal Pictures Co.,* 166 F.2d 690, 692 (2d Cir.1948) (Swan, *J.*) (in an action for infringement of plaintiff's common law right of literary property, "defendants [were] . . . sued as joint tortfeasors and, since between joint tortfeasors a plaintiff may elect which to sue, the resident defendants were not indispensable parties"); 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1614, at 225 (2d ed. 1986) ("Wright & Miller") ("The question of who must be joined as defendants in . . . copyright . . . suits for infringement . . . is fairly easy to answer. A suit for [copyright] infringement may be analogized to other tort actions; all infringers are jointly and severally liable. Thus, plaintiff may choose those he wishes to sue and is not required to join all infringers in a single action."). We conclude it was not within the district court's discretion to dismiss the claim for an injunction against the Museum on the theory that the Tribe was an indispensable party. We therefore vacate the dismissal of this claim and remand it to the district court for further consideration.

It may be that the district court will conclude, upon further analysis, that the museum is an agency of the Tribe and, as such, is entitled to benefit from the Tribe's immunity. *Cf. Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that states and their agencies are immune from suit under the Eleventh amendment). If so, plaintiff would need to amend its pleading to seek the injunction against the administrators of the Museum, rather than the museum itself. *See Ex parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908). But whether the suit to enjoin infringement of the plaintiff's

copyright is directed against the Museum or its administrators, we see no reason why the Tribe should be considered indispensable to that claim.

We also have considerable doubt whether the Tribe is indispensable to the adjudication of the other claims for copyright and tort damages against the non-tribal Defendants. The district court dismissed these claims (as well as all of the other claims against the non-tribal Defendants) with no explanation apart from a citation to *Fluent v. Salamanca Indian Lease Auth.*, 928 F.2d 542 (2d Cir.1991), and *Romanella v. Hayward*, 933 F.Supp. 163 (D.Conn.1996), *aff'd*, 114 F.3d 15 (2d Cir. 1997).[15] We believe that neither precedent is apposite. In *Fluent*, we dismissed an action against the Seneca Nation and various non-tribal defendants associated with the Seneca because the tribe itself was immune from suit and was found to be an indispensable party under Rule 19(b). *See id.* at 545–48. The lawsuit in *Fluent* sought a declaration that the plaintiffs were entitled to a renewal of their leases on Seneca-owned land pursuant to an 1875 Act of Congress, that a prior agreement concerning these leases was null and void, and that the Seneca Nation Settlement Act of 1990 (adopted in part to effectuate the prior agreement) was unconstitutional. *See id.* at 544–45. The nature of the relief sought by the plaintiffs in *Fluent* made clear that the Seneca was indispensable to the action; each facet of the declaratory judgment sought by the plaintiffs in *Fluent* inextricably implicated the interests of the Seneca, in whose absence the action could not proceed "in equity and good conscience." Fed.R.Civ.P. 19(b). We do not believe similar concerns affect this case.

*Romanella* is also inapposite. The reference to Rule 19(b) is a simple misunderstanding. *Romanella* was a "slip and fall" negligence action against the Pequot and certain of its officials. *See* 933 F.Supp. at 165. The district court dismissed the claim against the Pequot on the basis of the tribe's immunity. It then ruled that this immunity extended to the tribal officials named in the action, because the plaintiff had sued them in their representative capacities only, and had not asserted that they were acting beyond the scope of their authority in committing the negligent acts alleged. The district court made no reference to Rule 19(b) or to the notion of an indispensable party. *See id.* at 167. We affirmed in a brief per curiam "for substantially the reasons stated by the district court." *Romanella*, 114 F.2d at 16. Although we observed in passing that "[t]he ... court was correct in treating the tribe as an indispensable party," *id.*, the court had not done so. *Romanella* is thus inapposite to this case. Furthermore, *Romanella* is also distinguished from the instant dispute by the fact that the Museum is not an individual representative of the Tribe but rather a privately-held corporation. Finally, Bassett's complaint, unlike the complaint in *Romanella*, does allege that Bell and Campisi "acted beyond the scope of the authority that the [T]ribe could lawfully bestow" on them in infringing Bassett's copyrights and committing various state-law torts. *Cf. Doe v. Phillips*, 81 F.3d 1204, 1210 (2d Cir.1996) ("A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority ....") (internal quotation marks and citation omitted). In sum, we believe that neither *Fluent* nor *Romanella* supports the district court's dismissal of the claims for

---

**15.** We recognize that the district court stated that adjudicating the claims against the non-tribal Defendants in the Tribe's absence would "as a practical matter both impair and impede the [Tribe's] ability to protect its interest." Ruling on Defendants' Motion to Dismiss 2 (internal quotation marks and citation omitted). However, this is merely a conclusory statement. The court gave no explanation of how or in what respects the Tribe's interests would be impaired, nor balanced the Tribe's interests against the effect of dismissal on plaintiff's rights.

copyright and tort damages against the non-tribal Defendants.

While the district court cited inapposite precedent, it did not advert to the authorities that generally counsel against finding any potential defendant to be an indispensable party in a copyright or joint tort action. We mentioned several authorities above suggesting that a plaintiff in a copyright action may choose her defendant(s), no single infringer being considered indispensable. There is also abundant authority to the effect that, in a tort case, an aggrieved party is not compelled to sue all joint tortfeasors, but may proceed against as few or as many as he wishes. *See, e.g., Wells,* 166 F.2d at 692 ("[S]ince between joint tortfeasors a plaintiff may elect which to sue, the resident defendants were not indispensable parties."); 7 Wright & Miller § 1623, at 342 ("Under generally accepted principles of tort law, the liability of joint tortfeasors is both joint and several.... Rule 19 does not alter the long standing practice of not requiring the addition of joint tortfeasors. Thus, plaintiff may sue one or more of them without joining the others."). In discussing the copyright and tort damage claims, the district court did not consider those authorities, and furthermore provided no analysis that would support the dismissal. It gave no explanation of how the Tribe's interests might be harmed and failed to consider that, because of tribal immunity, dismissal of these claims pursuant to Rule 19(b) would probably prevent the plaintiff from vindicating her rights against the non-tribal Defendants in any forum. In our view, good reasons would be required to justify dismissal in those circumstances.

Somewhat different concerns are raised by the district court's finding that the Tribe is an indispensable party to Bassett's claim of breach of contract against the Museum. Claims for breach of contract may be more susceptible to dismissal under Rule 19(b) than claims sounding in copyright and tort, as the individual responsibility of each actor is defined by the contract and does not necessarily result in joint and several liability. There may be better reasons to support a dismissal under Rule 19(b) as to the contract claim. But once again, the district court furnished no analysis that could guide our review.

Accordingly, we vacate the dismissal under Rule 19(b) of the copyright, tort and contract claims against the non-tribal Defendants. The dismissal of the copyright claim for an injunction against the Museum is reversed. As to the claims for damages in copyright and tort against the Museum, Bell, and Campisi, and the claim for contract damages against the Museum, these are remanded for reconsideration. Whether the court denies or grants dismissal by reason of the Tribe's absence, it should explain its reasons—particularly with respect to the effect of the decision on plaintiff's ability to vindicate her claims, any prejudice to the Tribe, and the pertinence of the authorities cited above.

### Conclusion

The judgment of the district court is AFFIRMED in part and VACATED in part, and the matter is REMANDED to the district court for proceedings consistent with this opinion.