JONESFILM, Plaintiff–Appellant,

v.

LION GATE INTERNATIONAL, Sterling Home Entertainment, Home Box Office, a division of Time Warner Entertainment Company, L.P., Barnholtz Entertainment, Inc., The Carousel Picture Company Secs, The Carousel Picture Company, Sarl., Southern Pacific Bank, High Concept Productions, Inc., Lewis Horowitz Organization, a division of Southern Pacific Bank and Lion Gate Films, Defendants–Appellees.

Docket No. 01–9437.

United States Court of Appeals, Second Circuit.

Argued: June 27, 2002.

Decided: Aug. 14, 2002.

Barry L. Goldin, Allentown, PA (Deyan Ranko Brashich, New York, NY, on the brief), for Plaintiff–Appellant.

Marcia B. Paul (Catherine McHale, on the brief) Kay & Boose, LLP, New York, NY, for Defendants–Appellees.

Before JACOBS, LEVAL, and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

The plaintiff, Jonesfilm, appeals the district court's dismissal of its trademark action against the defendants, who produced and distributed the movie *The First 9½ Weeks*, for failure to join an indispensable party. The plaintiff alleges that *The First 9½ Weeks* infringes its trademark in the movie *9½ Weeks*. The defendants respond that they purchased the right to make a movie using the trademark *9½ Weeks* after the plaintiff sold that right to another party. Several years after *9½ Weeks* was released, the plaintiff transferred the right to produce a sequel based on *9½ Weeks* to NTTS, a movie producer located in the United Kingdom and a non-party to the plaintiff's suit. NTTS paid for the right to

produce a first sequel, which was released under the title *Another 9½ Weeks.* In addition to giving NTTS the right to produce the first sequel, the plaintiff gave NTTS a conditional option to produce additional movies that was contingent on the good faith negotiation of a compensation and credit agreement with the plaintiff. NTTS in turn transferred this conditional option to an entity that is now owned by the defendants.

The defendants produced and distributed *The First 9½ Weeks,* which was advertised as a prequel to *9½ Weeks.* The plaintiff was not contacted by any party prior to the release of *The First 9½ Weeks* and was initially unaware that the film had been made and released. After discovering the film, the plaintiff brought an action alleging trademark infringement and various state law claims against the defendants. The defendants moved to dismiss the plaintiff's action for failure to join an indispensable party. The district court granted the motion and dismissed the plaintiff's complaint. It concluded that NTTS is a necessary party under Fed.R.Civ.P. 19(a) because the adjudication of the plaintiff's action would affect NTTS' contractual rights. The district court reasoned that determining whether the defendants had the right to make *The First 9½ Weeks* would affect NTTS' interests because it would require defining the scope of the rights conferred by the plaintiff to NTTS. The district court also found that NTTS could not be joined as a party because the district court lacked personal jurisdiction over NTTS. It then concluded based on Fed.R.Civ.P. 19(b) that NTTS is indispensable to deciding the plaintiff's action.

We respectfully disagree with the district court because we conclude that deciding the plaintiff's claim will not affect NTTS' interests. Because it is undisputed that no party satisfied the condition precedent to making an additional movie by contacting the plaintiff before making *The First 9½ Weeks,* NTTS does not have a colorable interest in the subject matter of this litigation, the right to make an additional movie using the trademark *9½ Weeks.* Moreover, as this action can be decided by the district court without resolving any disputed issues of fact with respect to NTTS' conduct, this action need not affect the determination of whether NTTS fulfilled any of its contractual obligations with third parties.

Because we find that NTTS is not a necessary party, we conclude that the district court erred in dismissing the plaintiff's case for failure to join an indispensable party under Rule 19. Therefore, we vacate the district court's judgment and remand the case for further proceedings.

**Background**

The plaintiff, Jonesfilm, is a joint venture that produced the motion picture *9½ Weeks,* which starred Mickey Rourke and Kim Basinger. *9½ Weeks* was publicly released in 1986 and continues to be distributed domestically and abroad. In an agreement dated April 27, 1992, the domestic distributor of *9½ Weeks,* Turner Entertainment Co., assigned to Jonesfilm the rights to "all sequels, prequels, [and] remakes" based upon *9½ Weeks.*

A. The Agreements Transferring the Right to Make a First Sequel and Conditional Option to Make Additional Movies Based on *9½ Weeks*

1. The Jonesfilm/NTTS Agreement

Jonesfilm transferred some of its rights to produce additional movies using the trademark *9½ Weeks* to NTTS Productions Ltd. ("NTTS"), a movie producer and distributor incorporated in the United Kingdom, in an agreement dated October 15, 1995 (the "Jonesfilm/NTTS Agreement").

In the Jonesfilm/NTTS Agreement, NTTS was given the "exclusive right . . . to use the title '9½ Weeks' . . . but only with respect to [a first sequel] or other permitted sequels." Jonesfilm/NTTS Agreement at 2. The Agreement specified that "[a]ll rights not specifically granted to Purchaser [NTTS] are reserved to Owner [Jonesfilm]." *Id.* To make the first sequel based on *9½ Weeks,* NTTS was required to pay $700,000.00 to Jonesfilm and a number of other fees to third parties.

The Jonesfilm/NTTS Agreement also gave NTTS the option to produce "additional sequels" subject to certain conditions. Section 10 of the Jonesfilm/NTTS Agreement provides in relevant part:

> 10. *Further Motion Pictures, Sequels, etc.* If the First Sequel is produced and delivered on or before December 31, 1996, then and only then, Purchaser [NTTS] shall have the exclusive right to produce additional sequels ("Additional Pictures") . . . . on the same terms as set forth in this Agreement . . . subject only to good faith negotiation between the parties as to Owner's [Jonesfilm's] compensation and credit . . . Any transfer, mortgage, assignment or other disposition of any sequel rights shall be subject to Owner's [Jonesfilm's] rights hereunder.

Jonesfilm/NTTS Agreement at 8. NTTS satisfied the first condition of receiving the right to make additional movies when it timely produced and distributed a first sequel entitled *Another 9½ Weeks,* which starred Mickey Rourke and Angie Everhart.

California law governs the Jonesfilm/NTTS Agreement. An arbitration clause in the Agreement specifies that "[i]n the event of any dispute between the parties relating to the subject matter hereof, the parties hereby agree that any and all such disputes shall only be re-solved by binding arbitration in the City of Los Angeles pursuant to the arbitration provisions of the American Film Marketing Association Arbitration Tribunal." Jonesfilm/NTTS Agreement at 9.

### 2. Subsequent Agreements

#### a. The NTTS/Cinepix Agreement

In an agreement dated December 1, 1996 (the "NTTS/Cinepix Agreement"), NTTS transferred "the exclusive right to produce and exploit two new motion pictures" using the name *9½ Weeks* to Cinepix, which is now owned by certain of the defendants. NTTS/Cinepix Agreement at 1. Cinepix agreed to pay $100,000.00 as well as a percentage of the net receipts to NTTS for the right to make the two new motion pictures.

NTTS made a number of representations and warranties in the NTTS/Cinepix Agreement. It stated that it was the "sole and exclusive owner of all rights, title and interest in and to the Rights granted to Purchaser [Cinepix]." NTTS/Cinepix Agreement at 3. It also represented that it had "performed or will validly perform all of its obligations under and pursuant to any and all agreements with third parties . . . including, without limitation, the payment in full of all third party obligations . . . and any and all obligations, if any, to negotiate with third parties with respect to services or rights relating to the Picture, *except* to the extent Purchaser [Cinepix] is obligated to make such payments pursuant to Paragraph 2(A)." *Id.* at 4. In Paragraph 2(A), Cinepix agreed to pay "all of the sums due to third parties required by Seller's [NTTS'] chain of title." *Id.* at 2.

The NTTS/Cinepix Agreement is governed by Canadian law and mandates arbitration of any disputes between the parties to the agreement in Toronto, Canada. *See* NTTS/Cinepix Agreement at 6–7.

### b. The Cinepix/HCP Agreement

In an agreement dated June 1, 1997 (the "Cinepix/HCP Agreement"), Cinepix transferred the right to produce "one new motion picture using the title '9½ Weeks'" to defendant High Concept Productions, Inc. ("HCP") "[f]or one dollar ($1.00) and other good and valuable consideration." The agreement also announced that HCP planned to produce the new motion picture based on a screenplay entitled *The First 9½ Weeks.*

### B. The Alleged Infringement and the District Court's Dismissal of the Plaintiff's Action

Certain of the defendants are purportedly the owners of Cinepix and HCP. Allegedly without the knowledge or consent of the plaintiff, the defendants produced and distributed the movie *The First 9½ Weeks,* which has been advertised as a prequel to *9½ Weeks.* The plaintiff claims that it first learned of the alleged infringement in June 2001. It delivered a cease and desist letter dated July 11, 2001, to defendants Lion Gate Films, Inc. and Home Box Office to which there was no response.

The plaintiff then filed a complaint in the United States District Court for the Southern District of New York on July 26, 2001 naming Lion Gate Films, Inc. and a number of other producers and distributors of *The First 9½ Weeks,* such as Barnholtz Entertainment and Home Box Office, as defendants. NTTS was not named in the complaint as a defendant. The plaintiff alleges that the defendants violated the Lanham Act, 15 U.S.C. § 1125, and state law by producing and distributing a film of poor quality using the name *9½ Weeks* to which they had no right and in the process diluted the value of the trademark *9½ Weeks.*

The defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(7), arguing that NTTS is an indispensable party under Fed.R.Civ.P. 19. The defendants contended that the plaintiff's complaint had to be dismissed because it was impossible to join NTTS as a defendant. The district court granted the motion. The district court first concluded that NTTS is a necessary party under Rule 19(a), reasoning that NTTS' interests would be affected if the district court decided the plaintiff's action. Because the defendants' right to make movies based on *9½ Weeks* is derivative of the rights transferred from NTTS, the district court explained that the plaintiff's claim turned on "what rights were transferred from Jonesfilm to NTTS in the 1995 Agreement." Memo. Endorsed Decision at 3. The dispute, according to the district court, was whether the right to make additional movies transferred in the Jonesfilm/NTTS Agreement included the right to make a prequel. The defendants' defense to the plaintiff's trademark claims turned on whether the defendants had received the requisite rights from NTTS. Because the defendants' movie *The First 9½ Weeks* was arguably a prequel to *9½ Weeks,* if Jonesfilm did not transfer prequel rights to NTTS in the Jonesfilm/NTTS Agreement, then NTTS could not have transferred prequel rights to the defendants. Thus, according to the district court, NTTS had an interest in the subject matter of the plaintiff's claim because adjudicating it would require determining the scope of the rights transferred to NTTS by the Jonesfilm/NTTS Agreement.

Because the district court concluded that joinder of NTTS was not feasible since the district court did not have personal jurisdiction over NTTS, it evaluated whether NTTS is an indispensable party under Rule 19(b). The district court held that NTTS is an indispensable party because a judgment in the absence of NTTS would

prejudice NTTS, there was no way to shape a judgment to avoid such prejudice, a judgment would not be adequate in the absence of NTTS, and the plaintiff has an adequate remedy if the action was dismissed because it could pursue a claim against NTTS before a California arbitrator.

The plaintiff filed a timely notice of appeal.

**Discussion**

The district court determined that NTTS is both necessary and indispensable to the resolution of the plaintiff's action. Fed.R.Civ.P. 19(a) defines those parties who are "necessary" to an action. It provides in relevant part:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .

If a party that meets the criteria described in Rule 19(a) cannot be joined, the district court must determine whether the claim should be dismissed because the necessary party is "indispensable." Rule 19(b) provides factors that the district court must consider:

> (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof

cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

 A party cannot be indispensable unless it is a "necessary party" under Rule 19(a). *See ConnTech Dev. Co. v. University of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 681 (2d Cir.1996). In deciding whether a party is necessary, the abuse of discretion standard guides our inquiry. *See Johnson v. The Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir.1999). "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001) (footnotes omitted). If we determine that the district court erred in concluding that NTTS is a necessary party, NTTS cannot be an indispensable party and the district court therefore erred in dismissing the case.

The first standard by which a non-defendant party is necessary, whether "complete relief can be granted in the absence of the party," Fed.R.Civ.P. 19(a)(1), does not apply to this case. The absence of NTTS as a defendant in this case does not affect the relief that the plaintiff can recover for the damage it suffered from the distribution of *The First 9½ Weeks* or the declaratory relief of enjoining the distribution of that film. The plaintiff does not allege that NTTS participated or is participating in the infringement of its trademark. There is no allegation, for example, that NTTS had a part in producing or distributing *The First 9½ Weeks* or is distributing that film now.[1]

The defendants base their argument primarily on the second standard of Rule 19(a), which requires them to show that NTTS "claims an interest relating to the subject of the action" and that adjudication of the plaintiff's claim without NTTS may either "(i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R.Civ.P. 19(a)(2). In this case, the subject of the action is the right to produce an additional movie using the trademark *9½ Weeks*.[2] The plaintiff has claimed that the defendants have no such right and that their production of the movie *The First 9½ Weeks* violates its trademark. Thus, the issue is whether NTTS can claim an inter-est relating to the right to produce an additional movie using the trademark *9½ Weeks*.

While NTTS has claimed that it received an absolute right to produce an additional movie using the trademark *9½ Weeks*, for NTTS to be considered "necessary," there must be more than an unsupported assertion that NTTS has a claim to that interest. The claim must be strong enough such that the resolution of the plaintiff's action would either "(i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest...." Fed. R.Civ.P. 19(a)(2). Put another way, if NTTS has no basis for asserting that it had the absolute right to produce an additional movie, as a "practical matter" the plaintiff's litigation will not affect NTTS' interests. Moreover, if NTTS has no colorable claim to such an interest, the resolution of the case would not lead to a "substantial risk" that the defendants will be subject to an obligation to NTTS inconsistent with any obligation established by the plaintiff's litigation.

In this case, NTTS does not have a colorable claim to the right to produce an additional movie. At most NTTS had a conditional option to produce an additional film, not an absolute right. The Jonesfilm/NTTS agreement unambiguously provides that any right to produce additional pictures, is "subject ... to good faith ne-

---

1. Even if NTTS had contributed in some way to the trademark infringement, the plaintiff is not required to sue every infringer. *See, e.g., Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 358 (2d Cir.2000). Because every infringer is a joint tort-feasor who is jointly and severally liable to the victim, the plaintiff need only sue one such joint-feasor to obtain the full amount of damages that it is seeking.

2. The district court framed the issue in the case as whether *The First 9½ Weeks* was a prequel or sequel. But this distinction only becomes an issue if the condition precedent of negotiating a compensation and credit agreement in good faith is satisfied.

gotiation between the parties as to Owner's [Jonesfilm's] compensation and credit." Jonesfilm/NTTS Agreement at 8. In other words, an unambiguous condition precedent to the transfer of rights from the plaintiff to make an additional movie was the good faith negotiation of a compensation and credit agreement. It is undisputed that the plaintiff was not contacted by NTTS or any other entity about the production of *The First 9½ Weeks* and that there were no negotiations with respect to the compensation and credit for that movie. Moreover, the subsequent transfer of rights by NTTS to the defendants did not transform the conditional option into an absolute right. The requirement of good faith negotiation survived any transfer because according to section 10 of the Jonesfilm/NTTS agreement, which set forth the conditions of the option to make additional movies, "[a]ny transfer, mortgage, assignment or other disposition of any sequel rights shall be subject to Owner's rights hereunder." Jonesfilm/NTTS Agreement at 8.

The defendants also argue that resolving the plaintiff's claims would require a determination of NTTS' contractual interests relating to the right to produce an additional movie.[3] If the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a). *See, e.g., Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 48 (2d Cir.1996) ("The key issue in deciding whether either part of Rule 19(a) applies is the extent to which this case requires a determination of rights and interests un-

der [the contract to which the absent entity is a party]."). The gist of the defendants' argument is that if the district court were to determine that the defendants had no right to produce *The First 9½ Weeks,* then it would indirectly make a determination with respect to the rights conveyed by the plaintiff to NTTS. Such a conclusion might affect NTTS' contractual obligations to Cinepix, the party to which it subsequently conveyed the rights that it received in the Jonesfilm/NTTS agreement.

The question is whether the adjudication of the plaintiff's claims against the defendants would affect NTTS' contractual relationship with Cinepix, specifically NTTS' warranty that it owned the rights that it purported to transfer. NTTS made a number of contractual representations and warranties to Cinepix in the NTTS/Cinepix Agreement. It represented that it had "performed or will validly perform all of its obligations under and pursuant to any and all agreements with third parties ... including, without limitation, the payment in full of all third party obligations ... and any and all obligations, if any, to negotiate with third parties with respect to services or rights relating to the Picture, *except* to the extent Purchaser [Cinepix] is obligated to make such payments pursuant to Paragraph 2(A)." NTTS/Cinepix Agreement at 4. If there was a factual dispute with respect to whether NTTS had initiated good faith negotiations with the plaintiff for the production of an additional movie such as *The First 9½ Weeks,* then the resolution of that dispute by the district court could affect NTTS' interests. If the court were to decide such a factual dispute in favor of

---

**3.** The defendants also advance the argument that NTTS' interests are implicated because NTTS has a financial interest in the continued exploitation of *The First 9½ Weeks.* This is simply another variant of the argument that NTTS or the defendants can claim a right to produce an additional picture. As discussed

earlier, neither NTTS nor any other party has such a right because of the failure to contact the plaintiff before making *The First 9½ Weeks.* NTTS cannot claim that it has a right to a revenue stream based on a film that no party other than the plaintiff had the right to produce.

the plaintiff and conclude that NTTS had not negotiated in good faith, then Cinepix could argue based on that factual finding that NTTS had breached the warranty clause in the NTTS/Cinepix Agreement, which could be read to require NTTS to have negotiated the agreement with the plaintiff. Thus, if it were necessary to resolve a factual dispute that would determine whether NTTS met its contractual obligations to Cinepix, the adjudication of the plaintiff's claim might affect NTTS' interests.

But in this case, there is no factual dispute. The defendants do not contest the plaintiff's claim that no party attempted to contact it before the production of *The First 9½ Weeks*. Certainly, if NTTS had negotiated such an agreement it would be in the defendants' interest to point that fact out because it would likely be a strong defense to the plaintiff's allegations. Moreover, counsel for NTTS reviewed the plaintiff's complaint and submitted a declaration to the district court dated October 15, 2001. In that declaration, counsel for NTTS did not contest the allegation that the plaintiff was never contacted before *The First 9½ Weeks* was made and instead asserted that NTTS was given an absolute right rather than a conditional option to make an additional movie.

The undisputed fact that neither NTTS nor any entity claiming a derivative entitlement satisfied the condition precedent to making an additional movie might support the conclusion that defendants had no right to use the trademark *9½ Weeks*. As a "practical matter" such a decision would not affect NTTS' contractual interests because it would not resolve any disputed issues of material fact with respect to those interests. Moreover, there is no "substantial risk" that this conclusion would subject the defendants to inconsistent contractual obligations. The issue of whether the defendants have the right to produce an additional movie using the trademark *9½ Weeks* can be manifestly resolved on the undisputed fact that no party ever contacted the plaintiff to attempt good faith negotiations. If NTTS' failure to negotiate an agreement with the plaintiff breaches its obligations to the defendants, that would be the subject matter of a breach of contract suit between the defendants and NTTS. Resolution of the plaintiff's suit on the ground that no party contacted the plaintiff before *The First 9½ Weeks* would not settle any disputed material issues with respect to a breach of contract suit between the defendants and NTTS.

In sum, because it is undisputed that the plaintiff was not contacted before the production of *The First 9½ Weeks*, there is a clear basis for deciding that the defendants had no right to make an additional movie based on *9½ Weeks* that would not affect NTTS' interests. We conclude that NTTS is not a necessary party. Because NTTS is not a necessary party under Rule 19(a), it could not be an indispensable party under Rule 19(b).

### CONCLUSION

For the reasons explained above, we vacate the district court's decision dismissing the plaintiff's action for failure to join an indispensable party.[4] We remand the case for further proceedings.

---

4. We note that because the defendants did not move to compel arbitration, we do not decide

the issue of whether the plaintiff's claim against the defendants is subject to arbitration.