06-3532-cv
Federal Treasury Enterprise v. Spirits International N.V.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: December 15, 2009          Decided: October 8, 2010)

Docket No. 06-3532-cv

FEDERAL TREASURY ENTERPRISE SOJUZPLODOIMPORT
AND ZAKRYTOE AKTSIONERNOE OBSCHESTVO "LIVIZ",

*Plaintiffs-Appellants*,

– v. –

SPIRITS INTERNATIONAL N.V., SPI SPIRITS LIMITED, SPI GROUP SA, YURI SHEFLER, ALEXEY
OLIYNIK, ALLIED DOMECQ INTERNATIONAL HOLDINGS B.V. AND ALLIED DOMECQ SPIRTS &
WINE USA, INC.,

*Defendants-Appellees*.

Before: CABRANES, B.D. PARKER, *Circuit Judges*, and CASTEL, *District Judge.*[*]

      Plaintiffs-appellants appeals from a final judgment of the United States District Court for
the Southern District of New York (Daniels, *J.*) dismissing claims alleging violations of the
Lanham Act and common law. In this opinion, we reject the district court's conclusion that
plaintiff was barred from challenging the validity of the assignment of the trademarks at issue in
federal court because those trademarks had become "incontestable" pursuant to 15 U.S.C. §
1065. Accordingly, we vacate and remand with regards to plaintiff's trademark,
misappropriation, and unfair competition claims. In a summary order filed contemporaneously
with this opinion, we affirm the district court's dismissal of plaintiff's fraud and unjust
enrichment claims.

---

[*] The Honorable P. Kevin Castel, of the United States District Court for the Southern District of
New York, sitting by designation.

KATHLEEN M. SULLIVAN, (DANIEL H. BROMBERG, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, Redwood Shores, California (JOHN B. QUINN, DAVID W. QUINTO, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, California, JUSTIN HUGHES, Cardozo School of Law, New York, New York, JEFFREY A. CONCIATORI, JONATHAN OBLAK, WILLIAM B. ADAMS, New York, New York, *on the brief*), *for Plaintiff-Appellant Federal Treasury Enterprise Sojuzplodoimport.*

EUGENE D. GULLAND (OSCAR M. GARIBALDI, NEIL K. ROMAN, EMILY JOHNSON HENN, *on the brief*), Covington & Burling LLP, New York, District of Columbia, (BRADLEY J. NASH, Covington & Burling LLP, New York, New York, *on the brief*) *for Defendants-Appellees Spirits International N.V., SPI Spirits Limited, SPI Group SA, Yuri Shefler, Alexey Oliynik*

DAVID H. BERNSTEIN (MICHAEL SCHAPER, *on the brief*) Debevoise & Plimpton LLP, New York, New York *for Defendants-Appellees Allied Domecq.*

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiff-Appellant Federal Treasury Enterprise Sojuzplodoimport ("FTE") appeals from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*) arising from litigation over ownership of the famous STOLICHNAYA vodka trademarks. FTE, an entity created by the Russian government and purportedly granted rights by the government to manage the trademarks, sued two groups of defendants: (1) Spirits International N.V., SPI Spirits Limited, SPI Group SA, Yuri Shefler, and Alexey Oliynik (collectively, the "SPI defendants"), who also claim to be the lawful owners of the trademarks, and (2) Allied Domecq International Holdings B.V. and Allied Domecq Spirts & Wine USA, Inc. (collectively, "Allied Domecq"), to whom SPI

has assigned its purported ownership rights. FTE's complaint asserted a variety of Lanham Act and related common-law claims. *See* 15 U.S.C. § 1051 *et seq.* The principal dispute in the district court was essentially whether Allied Domecq's claimed rights in the marks had become "incontestable" under the Lanham Act. *See* 15 U.S.C. § 1065(1)-(4). The district court concluded that the marks had become incontestable, and that therefore FTE could not challenge the validity of their assignment to Allied Domecq. The district court also considered and dismissed certain of FTE's common-law claims. Because we conclude that the district court improperly conflated incontestability with the analytically distinct issue of whether a subsequent transfer of the marks was valid, we hold that FTE may challenge Allied Domecq's claim of ownership of the marks in a federal action. Accordingly, we vacate the portion of the judgment that relates to the trademark claims. In a summary order filed contemporaneously with this opinion, we affirm the district court's dismissal of the common-law fraud and unjust enrichment claims.

## BACKGROUND

When reviewing a district court's dismissal under Rule 12(b)(6), we accept as true the nonconclusory factual allegations in a complaint. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The Second Amended Complaint (the "complaint") alleges a complicated set of events by which the defendants supposedly obtained record title and control of a group of American trademarks that relate to the STOLICHNAYA mark. "Stolichnaya" is Russian for "from the capital," and is the name that the Soviet government used to market the vodka both domestically and abroad prior to the collapse of the Soviet Union. As part of this marketing, the All-Union Association Sojuzplodoimport ("V/O-SPI"), a Soviet-owned entity, registered a trademark for

3

"STOLICHNAYA" with the United States Patent and Trademark Office in February 1969 (Registration No. 865,462). In 1990, V/O-SPI became the All-Union Foreign Economic Association Sojuzplodoimport ("VVO-SPI"). In 1991, VVO-SPI assigned the rights to the American trademarks, along with the authorization to import vodka under those marks into the United States, to the American corporation PepsiCo, in a contract which provided that the marks would revert to VVO-SPI in 2001. These facts are not in dispute.

What happened after the assignment to PepsiCo Inc. ("Pepsico"), is, however, hotly contested. Broadly stated, the disputed facts involve a series of allegedly unlawful transactions transferring Russia's rights to the marks to privately held Russian companies, who then transferred those rights to non-Russian companies. The factual allegations in the complaint present the following complicated chain of events.

On December 26, 1991, the Soviet Union officially dissolved. At the time, the General-Director of the state-owned VVO-SPI was Evgeniy Filoppovich Sorochkin, who, in the ensuing confusion, designed a scheme with others of the VVO-SPI staff to seize its assets for themselves. Sorochkin took advantage of the privatization process that followed the dissolution of the Soviet Union and the conversion of the Russian economy into a market economy, and in January 1992 registered a private Russian corporation called the Foreign Economic Joint Stock Company Sojuplodoimport ("VAO-SPI"). Sorochkin then took various actions—including transferring assets from VVO-SPI to VAO-SPI in 1993—which were evidently sufficient to convince PepsiCo that VAO-SPI was the successor of VVO-SPI. In 1994 the two corporations entered into an agreement

4

which adverted to the agreement between PepsiCo and VVO-SPI and which referred to VAO-SPI as the owner of the STOLICHNAYA trademarks.[2]

In 1997, VAO-SPI spawned a successor-in-interest, which subsequently sold the reversionary rights from the PepsiCo contract to a new company, Closed Auction Company Sojuzplodimport (one letter different from sojuzplodoimport) ("ZAO-SPI"), controlled by defendants Yuri Shefler and Alexey Oliynik.[3] Two years later, while still under the control of Shefler and Oliynik, ZAO-SPI sold its rights to the marks to defendant Spirits International, N.V. Spirits International (a Dutch corporation headquartered in Curacao) is a subsidiary of defendant SPI Group SA (a Swiss company headquartered in Geneva). Plaintiff alleges that both of these corporations, together with defendant SPI Spirits Limited (a Cypriot corporation), are managed and owned by Shefler and Oliynik. Thus, plaintiff alleges, when ZAO-SPI transferred its purported trademark rights to Spirits International,

---

[2] Sorochkin is alleged to have moved the assets of VVO-SPI to VAO-SPI with the assistance of two letters purportedly signed by a high-ranking official of the Russian Ministry of Agriculture in 1992, which stated that VAO-SPI was VVO-SPI's sole legal successor and had the right to export vodka to the United States under the STOLICHNAYA mark. The Russian Ministry of Agriculture determined in 2003 that the letters were forgeries, and the purported signatory has stated that he never signed such letters. Plaintiff alleges the contents of the letters were clearly untrue (even aside from the forgery) because VVO-SPI did not have a legal successor (it remained in existence until 2001), and because Sorochkin's actions did not meet the requirements for privatization of a state-owned enterprise under Russian law (which include receiving approval from a certain Russian ministry and following other provisions of the framework established by Russian statute). However, VAO-SPI was able to use these letters to secure a declaration from the Russian equivalent to the United States Patent and Trademark Office that VAO-SPI owned the foreign registrations (e.g., the American trademarks) for STOLICHNAYA vodka as a lawful successor to VVO-SPI. Finally, in 1993, while still serving as head of both the state-owned and privately held entities, Sorochkin included a clause in the latter's corporate charter which declared it to be the legal successor to VVO-SPI.

[3] The name of VAO-SPI's successor-in-interest was Foreign Economic Closed Joint-Stock Company Sojuzplodoimport ("VZAO-SPI"). Shefler and Oliynik were somehow able to wrest control of VZAO-SPI from Sorochkin in April 1997, at which point they organized ZAO-SPI and transferred the trademark rights from VZAO-SPI to ZAO-SPI.

it was effectively transferring those rights to yet another corporate entity owned or controlled by Shefler and Oliynik, only this time to one located outside of Russia.

In November 2000, SPI Spirits and Spirits International entered into an agreement with defendants Allied Domecq International Holdings, B.V. (a Dutch corporation) and Allied Domecq Spirits & Wines USA, Inc. (an American corporation), in which the SPI entities agreed to assign the marks to Allied Domecq beginning in 2001 until 2011, at which point the marks would revert to SPI.[4]  Allied Domecq then began marketing and selling STOLICHNAYA vodka in the United States.[5]

Meanwhile, VVO-SPI (the state entity whose assets Sorochkin transferred to his own private company, VAO-SPI, in 1993 following the dissolution of the Soviet Union) continued to exist.  In July 2001, the Russian government converted it to a different corporation, called Federal State Unitary Enterprise Economic Association Sojuzplodoimport ("FGUP VO SPI").  That same year, Russia's government created plaintiff FTE.  In 2002, after Russia recovered rights to the *Russian*

---

[4] More precisely, SPI agreed to cause the then-current registered owner of the STOLICHNAYA trademarks – PepsiCo – to assign ownership of the marks to Allied Domecq, beginning in 2001, upon termination of the contractual term of PepsiCo's assignment.  Allied Domecq in turn acknowledged SPI's reversionary interest in the marks and agreed to assign the marks to SPI upon termination of this new agreement in 2011.  Attached to that agreement was a deed of assignment, by which PepsiCo would assign its interests in the STOLICHNAYA trademarks to Allied Domecq as of January 1, 2001.  As part of the deed, PepsiCo would warrant that it had the authority and title to make the assignment.  PepsiCo. did in fact deed its trademarks to Allied Domecq, pursuant to the direction of the SPI entities, and thus apparently believed that those entities were the legitimate successors to the reversionary right which VVO-SPI retained under the 1991 contract.

[5] Allied Domecq has informed this Court that it no longer had any interest in the STOLICHNAYA vodka brand and that it had transferred its ownership of the relevant trademarks to SPI.  Allied Domecq argued that this rendered FTE's injunctive and declaratory claims against it moot.  FTE responded by arguing that, instead, SPI should be substituted as the proper defendant with regards to its requests for injunctive or declaratory relief.  On remand, the district court should consider whether and to what extent SPI should be substituted for Allied Domecq with regard to FTE's injunctive and declaratory relief claims.

STOLICHNAYA marks from an SPI entity, Russia gave FTE the rights to manage (but not assign) the Russian STOLICHNAYA trademarks, and in 2005 it charged FTE with representing its interests relating to the recovery and registration of alcohol trademarks abroad.[6]  This litigation resulted.

In 2005, FTE sued the SPI entities, Shefler, Oliynik, and Allied Domecq in the Southern District of New York.[7]  FTE asserted fifteen claims and sought a declaratory judgment and rectification of the trademark register.  Against all defendants, FTE alleged fraud, misappropriation, unfair competition, and copyright infringement.  Against the SPI defendants, FTE also asserted claims of unjust enrichment, contributory trademark infringement, contributory trademark dilution, and contributory false designation of origin.  Against Allied Domecq, FTE asserted claims of aiding

---

[6] Plaintiff FTE alleges that many of the events in this sequence also affected the record chain of title for the STOLICHNAYA mark in Russia.  V/O-SPI registered the STOLICHNAYA mark with the Russian equivalent of the United States Patent and Trademark Office in 1969 (the same year that it registered the U.S. trademark here).  When Sorochkin transferred the assets of VVO-SPI (V/O-SPI's successor) to VAO-SPI in 1993, he claimed the Russian mark; in 1994, the Russian trademark office concluded that VAO-SPI was VVO-SPI's successor based on the suspect letters from the Ministry of Agriculture.  *See* note 1*, supra*.  In 1997, around the same time that VZAO-SPI "sold" its worldwide rights to the STOLICHNAYA brand to ZAO-SPI, *see* note 2, *supra,* it recorded an assignment of the Russian marks to ZAO-SPI.  In 2000, the Russian government became suspicious of the 1993 transfer of the assets of VVO-SPI to VAO-SPI and its successors, and so in 2001 the Russian Public Prosecutor sought and obtained a ruling from a division of Russia's highest commercial court, the Supreme Court of Arbitration of the Russian Federation, that VAO-SPI was not the legal successor of VVO-SPI.  In 2002, a division of the Court of Arbitration of Moscow ruled that because VZAO-SPI was not a legal successor of VVO-SPI (since VZAO-SPI was a later iteration of VAO-SPI), then the 1997 assignment of the Russian trademarks from VZAO-SPI to ZAO-SPI was null and void.  An appellate division of the Court of Arbitration of Moscow upheld that ruling later the same year.

[7] FTE's co-plaintiff was Obschestvos Ogranichennoi Otvetstvennost'yu Chernogolovskii Zavod Alkogol'noi Produkcii ("Ost Alco"), purportedly the licensed Russian manufacturer of STOLICHNAYA vodka.  On May 10, 2006, the parties stipulated that Ost Alco's interest in the litigation had been transferred to Zakrytoe Aktsionernoe Obschestvo ("Liviz"), and that Liviz should be substituted as a party.  Consequently, when FTE appealed the district court's judgment against it, Liviz joined it as a co-appellant.  However, the firm that initially represented both FTE and Liviz requested leave to withdraw from representing Liviz during the appeal.  This court granted that motion.  *See* Order of Feb. 26, 2009.  Because Liviz was represented by counsel when it filed its notice of appeal and its briefs, Liviz perfected its appeal before its counsel withdrew.  The issues raised in Liviz's appeal are also resolved by this opinion.

and abetting fraud, trademark infringement, trademark dilution, and false designation of origin. FTE also sought cancellation of certain marks. FTE alleged that the district court had jurisdiction over its federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 USC § 1338 (jurisdiction over claims arising from Acts of Congress relating to trademarks and copyrights), and supplemental jurisdiction over its state-law claims pursuant to 28 U.S.C. § 1367.

On defendants' motion to dismiss, the district court dismissed most of FTE's claims for failure to state claims upon which relief could be granted. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, No. 04-cv-8510 (S.D.N.Y. Mar. 31, 2006). *First*, the district court held that FTE's trademark and misappropriation claims (claims 1, 4, 6-8, 10-12, and 14-15) failed because they sought to challenge ownership of a trademark that had become incontestable under the Lanham Act, but had not alleged the existence of any of the Act's statutory exceptions to incontestability. The district court also dismissed the unfair competition and false designation of origin claims (claim 5 and claim 13) for the same reason, except to the extent those claims alleged false advertising and marketing claims against Allied Domecq unrelated to the ownership of the STOLICHNAYA trademarks. *Second,* the district court dismissed the false advertising claims against the SPI defendants on the ground that FTE failed to plead that SPI advertised in the United States. *Third,* the district court dismissed FTE's fraud claims (claims 2 and 9) on the ground that the only party which had relied on the allegedly fraudulent statements of the defendants was PepsiCo, not FTE. *Fourth,* the district court dismissed FTE's claim of unjust enrichment (claim 3) on the ground that the allegations did not establish entitlement to equitable relief.

After the district court dismissed the bulk of FTE's claims, FTE voluntarily dismissed its remaining claim (unfair competition due to false advertising or marketing against Allied Domecq),

and the district court entered a final judgment. This appeal followed. We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## DISCUSSION

The district court dismissed FTE's trademark-related claims on the ground that the STOLICHNAYA trademarks had become incontestable. The Lanham Act establishes a process by which a registered trademark may become "incontestable." A registrant may take advantage of this procedure if: (1) there has been no final decision adverse to the trademark registrant's claim of ownership over the mark; (2) there is no pending adjudication that would involve the ownership rights; (3) the registrant has filed an affidavit asserting that the mark has been in continuous use in commerce for five years after registration, is still in use, and that the first two conditions are met; and (4) the mark has not become a generic name for the goods and services for which it is registered. 15 U.S.C. § 1065(1)-(4). Once these steps occur, the "incontestable" trademark provides evidence of the registrant's ownership of that mark, subject to certain enumerated defenses, and accords the registrant the "exclusive right to use the mark." 15 U.S.C. § 1115(b). The Act also provides that the term "'registrant' embrace[s] the . . . assigns" of a registered mark. 15 U.S.C. § 1127.

The district court concluded that the STOLICHNAYA registration had become incontestable in 1974, once V/O-SPI, who registered the mark in 1974, had satisfied the four conditions in § 1065. It also noted that the Patent and Trademark Office ("PTO") identifies Allied Domecq as the record owner as the result of an assignment from PepsiCo. *See* note 3, *supra*. The district court then concluded that Allied Domecq could step into the shoes of PepsiCo and rely on the incontestable registration of the trademarks as conclusive evidence of ownership, and consequently concluded that

9

FTE could not pursue claims purportedly challenging Allied Domecq's ownership of the marks. The district court then also rejected FTE's attempt to challenge the incontestable marks under one of the statutory defenses in the Act. *See* 15 U.S.C. § 1115(b).[8]

The district court's analysis was mistaken in one very important respect: it permitted Allied Domecq to "step into the shoes" of PepsiCo, the previous registrant of the marks, on the ground that under the Lanham Act the term "registrant" includes the "assigns" of a registrant. *See* 15 U.S.C. § 1127. Because, the district court reasoned, the marks were incontestable when held by V/O-SPI, they continued to be incontestable when held by Allied Domecq – an assignee – and, consequently, FTE's claims failed. Undoubtedly, the term "registrant" includes its "assigns" under the Act, but we disagree with the district court that this conclusion ends the matter. The district court was also called

---

[8] 15 U.S.C. § 1115(b) establishes the following defenses to incontestability:
**(1)** That the registration or the incontestable right to use the mark was obtained fraudulently; or
**(2)** That the mark has been abandoned by the registrant; or
**(3)** That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services on or in connection with which the mark is used; or
**(4)** That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; or
**(5)** That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved; or
**(6)** That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: *Provided, however,* That this defense or defect shall apply only for the area in which the mark was used prior to such registration or such publication of the registrant's mark; or
**(7)** That the mark has been or is being used to violate the antitrust laws of the United States; or
**(8)** That the mark is functional; or
**(9)** That equitable principles, including laches, estoppel, and acquiescence, are applicable.

upon to inquire whether a valid assignment had ever actually taken place. This inquiry was required because only after a *valid* assignment of trademarks does the assignee succeed to the rights of the assignor. *See* 3 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* 18:15, at 18-33 (4th ed. 2006) (*citing Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*, 208 U.S. 554, 558 (1908) (Holmes, *J.*)). Obviously, an assignment obtained by fraud would not be valid.

The Lanham Act provides that the fact that an assignment "is recorded in the United States Patent and Trademark Office . . . [is] prima facie evidence of execution" of that assignment. 15 U.S.C. § 1060(a)(3). Prima facie evidence of execution is not the same as conclusive evidence of the validity of an assignment. As the PTO has stated, "[t]he mere act of recording [an assignment] document is a ministerial act," and "[t]he Assignment Branch [of PTO] does not examine the substance of the transaction;" rather, it records any assignment "that appears on its face to be an assignment." *In re Ratny,* 24 U.S.P.Q. 2d 1713, 1715 (Com'r Pat. & Trademarks 1992). "Since the act of recording a document is not a determination of the document's validity," the existence of a recorded assignment "does not preclude a party from . . . establishing its ownership of the mark in a proper forum, *such as a federal court*." *Id.* (emphasis added); *see also* Louis Altman and Malla Pollack, 3 *Callmann on Unfair Competition, Trade & Monopolies* § 20:62 (4th ed. 2010). If the mere fact that the registrant satisfied the requirements for incontestability could preclude FTE's claim, then incontestability would transform recording – a ministerial act – into a mechanism for conclusively defeating allegations (which must be credited on a motion to dismiss) challenging the legality of the assignment. Defendants' statutory interpretation would lead to a perverse result in cases such as this, where all parties agree that the trademarks became incontestable in 1974, but the disputed assignment comes from a series of transactions that occurred many years later.

11

As noted, none of the parties challenges the proposition that the marks became incontestable in 1974, but FTE challenges the validity of the transaction by which Allied Domecq purports to have been assigned the rights to those marks. Indeed, FTE's main contention is that it, not Allied Domecq, is the legitimate successor-in-interest to the incontestable marks because the series of events leading to the purported assignment to Allied Domecq was tainted by fraud. FTE has the right to pursue this contention in court. Incontestability was designed to protect the "registration of the mark." 15 U.S.C. § 1115(b). Although the Lanham Act does construe the term "registrant" to "embrace[]" "assignees," we think that the district court read too much into this very general statement by effectively concluding that any recorded assignment of an incontestable registration cannot be challenged. Thus, if at the end of the day FTE is able to prove that its marks were unlawfully assigned, then the district court would be obligated to consider appropriate relief.[9]

Having determined that the question of the validity of the assignment is antecedent to the question of incontestability, we now consider whether FTE brought a proper challenge, in the proper forum, to that assignment. Appellees essentially contend that FTE can only bring a state-law claim to challenge that assignment, and that, consequently, FTE has no federal claim. We reject that contention. We accept the premise that state law (or possibly Russian law) may govern the validity of the assignment from PepsiCo to Allied Domecq. However, we note that ownership of the relevant trademark is one of the "necessary elements . . . of trademark infringement under the Lanham Act."

---

[9] Because we conclude that Allied Domecq and SPI cannot rely on the incontestable status of the trademark, we do not reach the parties' arguments over whether FTE alleged a valid statutory defense to incontestability. We also do not reach FTE's argument that the district court's decision violated the United States' obligations under the Agreement on the Trade-Related Aspects of International Property Rights, WTO Agreement, Annex IC, Legal Instruments-Results of the Uruguay Round vol. 1, 33 I.L.M. 1125 (1994).

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 259-60 (2d Cir. 2005). Accordingly, federal courts may, applying the relevant law, adjudicate the ownership of a trademark as part of an infringement claim. *See, e.g., Rare Earth, Inc. v. Hoorelbeke*, 401 F. Supp. 26, 37 n.20 (S.D.N.Y. 1975) ("[I]n order to determine the federal claim for infringement, the district court, as a preliminary matter, permits the plaintiff to establish the facts which underlie his claim of ownership.").

In the related field of copyright, we have held that federal courts possess subject matter jurisdiction over a copyright claim so long as "a complaint alleges a claim or seeks a remedy provided by the Copyright Act," even if the plaintiff seeking a copyright remedy is only entitled to that remedy "on a prior showing of contractual entitlement," i.e., even if the court must first resolve a state law issue. *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 349, 355 (2d Cir. 2000) (*citing T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964) (Friendly, *J.*)).[10]  Until *Bassett,* "courts in this circuit were roughly divided into two camps," those who followed Judge Friendly's "face of the complaint" test from *T.B. Harms,* and those who looked beyond the complaint and followed the more demanding "essence of the dispute test" that we set forth in *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926 (2d Cir. 1992).  *See Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 376 (S.D.N.Y. 2000).  In *Bassett,* we abrogated *Schoenberg,* declaring the essence of the complaint test "unworkable," and reaffirmed *T.B. Harms.  Bassett,* 204 F.3d at 355-56.  *Bassett* pointed out that if federal courts could not determine the state-law issues intertwined with a copyright suit, then the

---

[10] We acknowledge that trademark and copyright are distinct fields of law, and concepts that apply to one might not be applicable to the other.  Although Congress used the same statutory section to grant jurisdiction over actions which arise under both the Lanham Act and the Copyright Act, it authorized concurrent state and federal jurisdiction over trademark claims but granted exclusive jurisdiction over copyright cases to the federal courts.  *See* 28 U.S.C. § 1338.

plaintiff would be forced to litigate exclusively in state court and would be deprived of the remedies Congress provided in the Copyright Act. *Id.* at 348.

We conclude that similar concerns urge the same approach in trademark litigation. To adopt a contrary rule would leave plaintiffs who seek the remedies Congress created under the Lanham Act with two unappealing options. One option would force plaintiffs to engage in piecemeal litigation—first a state court proceeding to determine the question of ownership, and then a federal court proceeding under the Lanham Act. The other option would force plaintiffs to litigate all aspects of the case in state court, which would eliminate the choice between the state and federal fora that Congress offered litigants wishing to pursue claims arising under the Lanham Act. *See* 28 U.S.C. § 1338(a).

Several district courts in our Circuit have anticipated this holding, and have concluded that they had jurisdiction over similarly positioned trademark cases. For example, when faced with a suit pled as a trademark infringement claim, but which involved state-law interpretation of a licensing agreement which governed the trademark's use, then-District Judge Leval applied the teaching of *T.B. Harms* and concluded that jurisdiction existed, because the plaintiff had pled a federal trademark infringement claim and sought federal statutory remedies. *Foxrun Workshop, Ltd. v. Klone Mfg., Inc.*, 686 F. Supp. 86, 90 (S.D.N.Y. 1988) (holding that "[a]lthough [the] court may be required to make a preliminary determination that the rights to the trademarks have reverted to plaintiff under the license agreement, the necessity for that determination does not defeat federal jurisdiction"). *See also Daniel Wilson Prods., Inc. v. Time-Life Films, Inc.*, 736 F. Supp. 40, 43 (S.D.N.Y. 1990) ("Where a complaint alleges a federally conferred right, such as a copyright, a trademark or a patent, then alleges violations of that right and requests remedies provided by federal statute, this should be

14

enough to confer federal jurisdiction. The fact that such a claim arises in the context of a disruption of contractual arrangements and presents certain contract issues should not remove it from that jurisdiction.").[11]

Applying the *T.B. Harms/Bassett* rule to FTE's complaint, we hold that it properly invokes federal jurisdiction. FTE specifically alleges trademark infringement and dilution, false designation of origin, and seeks cancellation of marks and rectification of the register, all pursuant to the Lanham Act. *See* 15 U.S.C. §§ 1114(1), 1119, 1125(a), 1125(c). FTE also seeks remedies provided for by the Lanham Act: treble damages, costs, attorney's fees, permanent injunctive relief, and cancellation of certain marks. *See* 15 U.S.C. §§ 1116, 1117(b), 1119. As a result, we conclude that FTE has pled claims which arise under the Lanham Act, and, therefore, federal question jurisdiction exists not only over the infringement claims but also over the antecedent issue of the validity of the assignment, an issue whose resolution may depend on state or foreign law. For these reasons, the district court's

---

[11] *Foxrun* represented an extension of Judge Friendly's *T.B. Harms* test to Lanham Act claims, and predated this Circuit's move away from *T.B. Harms* in *Schoenberg* four years later. In a sense, then, our *Bassett* decision affirmed Judge Leval's logic in *Foxrun*, as at least one district court has subsequently recognized. *See Ryan,* 107 F. Supp. 2d at 377 ("substituting trademark for copyright" and applying *Bassett* to a Lanham Act claim). More recently, the *T.B. Harms/Bassett* rule has been applied to a case where the plaintiff alleged trademark infringement and sought statutory remedies as a consequence of an allegedly fraudulent transfer and misappropriation of a trademark. *See Pennacchio ex rel. Old World Brewing Co. v. Powers*, No. 05-cv-0985, 2007 WL 446355, at *1 (E.D.N.Y. Feb. 5, 2007). Because the plaintiff's complaint "allege[d] trademark infringement and [sought] relief granted by the Lanham Act," the district court concluded it had jurisdiction over the suit. *Id.* at *4. It did so even though there were issues of state contractual law raised by the plaintiff's assertion that he was the rightful owner of the trademark at issue. The district court decided that "there is no reason that [it could not] address both the trademark claims, as well as the issues of contract law that are intertwined with such trademark claims," and explicitly rejected the argument that plaintiff be forced to litigate the issues surrounding the ownership of the trademark in state court. *Id.* at *4 n.3.

15

dismissal of FTE's trademark and misappropriation claims (claims 1, 4, 6-8, 10-12, and 14-15) is vacated, as is its dismissal of FTE's claims sounding in unfair competition (claims 5 and 13).[12]

## CONCLUSION

For the foregoing reasons, we hold that FTE can challenge the validity of the assignment of the incontestable STOLICHNAYA trademarks to Allied Domecq, and that there is federal jurisdiction over those claims under the Lanham Act. Accordingly, the district court's judgment is VACATED with respect to claims 1, 4, 6-8, 10-13, and 15, and REMANDED for further proceedings. The district court's dismissal of the remaining claims is affirmed in the companion summary order.

---

[12] The district court did not dismiss claims 5 and 13 against Allied Domecq to the extent they alleged deceptive marketing and advertisement independent of the trademarks' use. As discussed above, the plaintiffs voluntarily dismissed that form of unfair competition claim against Allied Domecq, and did not challenge the district court's dismissal of a similar claim against SPI for reasons unrelated to FTE's ability to assert its ownership of the contested trademarks. That decision, and FTE's non-suit of the claims against Allied Domecq, are not affected by the reinstatement of the portion of the unfair competition claim predicated on the use of the STOLICHNAYA trademarks.

We do not determine that federal law is the appropriate source of authority to answer the question of whether PepsiCo validly assigned the STOLICHNAYA trademarks to Allied Domecq. It may well be that either New York or Russian law will supply the relevant source of authority. We leave this question to the district court in the first instance.

16