Goodrich v. LIRR Co.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2010

Submitted: March 7, 2011                    Decided: August 15, 2011

Docket No. 10-2809-cv

_____

GREGORY GOODRICH,

*Plaintiff-Appellant*,

-v.-

LONG ISLAND RAIL ROAD COMPANY, DONALD RUSSELL, AND JOHN DOE "A,"
NAME BEING FICTITIOUS, TRUE NAME UNKNOWN,

*Defendants-Appellees*.

_____

Before:        FEINBERG, LIVINGSTON, and LOHIER, *Circuit Judges*.

Plaintiff-Appellant Gregory Goodrich ("Goodrich"), an employee of Defendant-Appellee

The Long Island Rail Road Company ("LIRR"), appeals from a judgment of the United States

District Court for the Southern District of New York (Scheindlin, *J.*) granting the LIRR's motion

to dismiss his complaint for failure to state a claim.  Goodrich brought suit under the Federal

Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, against the LIRR and two individual

defendants, alleging claims of negligent infliction of emotional distress and intentional infliction of

emotional distress against each of the three defendants; he asserts on appeal that his intentional

infliction of emotional distress claim against the LIRR should not have been dismissed.  Because

we hold, in agreement with the district court, that a plaintiff bringing a claim for intentional

infliction of emotional distress under FELA is required to satisfy the "zone of danger" test outlined

by the Supreme Court in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 547-48, 554 (1994),

we affirm.

Affirmed.

PHILIP J. DINHOFER, Philip J. Dinhofer, LLC, Rockville Centre, NY, *of counsel to* Frederic M. Gold, P.C., New York, NY, *for Plaintiff-Appellant*.

BRIAN K. SALTZ, Esq., *for* Catherine A. Rinaldi, Vice President/General Counsel & Secretary, The Long Island Rail Road Company, Jamaica, NY, *for Defendant-Appellee Long Island Rail Road Company*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Plaintiff-Appellant Gregory Goodrich ("Goodrich") is an employee of Defendant-Appellee

The Long Island Rail Road Company ("LIRR"). On March 12, 2010, he brought suit under the

Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, against his employer, the LIRR,

and two individual defendants, alleging claims of negligent infliction of emotional distress ("NIED")

and intentional infliction of emotional distress ("IIED") against each of the three defendants. He

appeals from a June 30, 2010, judgment of the United States District Court for the Southern District

of New York (Scheindlin, *J.*), granting the LIRR's motion to dismiss his complaint, including his

IIED claim against the LIRR, for failure to state a claim. Because we hold that the district court

correctly concluded that a plaintiff bringing a claim for IIED under FELA is required to satisfy the

"zone of danger" test outlined by the Supreme Court in *Consolidated Rail Corp. v. Gottshall*, 512

U.S. 532, 547-48, 554 (1994), we affirm.

# BACKGROUND

In reviewing the district court's grant of a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept as true the nonconclusory factual allegations made by Goodrich in his complaint. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 63 (2d Cir. 2010).

Goodrich alleges that while he was employed by the LIRR as an electrician at its facility in Hillside Yard, Queens, New York, he suffered severe emotional distress as a result of the actions of defendants the LIRR and two LIRR employees, Donald Russell ("Russell") and an unnamed individual "John Doe 'A.' " At a pretrial conference conducted after the LIRR had filed its motion to dismiss in this case, Goodrich further alleged that, at the time the challenged conduct took place, he had been HIV positive for a number of years.[1] In August 2009, he had allegedly been out of work with the flu for several days and had submitted a sick leave application in order to be compensated for the days missed while he was ill. While he was away from work, an individual, whom Goodrich believes was Russell, took the sick leave form from Goodrich's locker, added the words "And HIV positive" beneath the doctor's flu diagnosis, and posted it on a public bulletin board at the LIRR's facility. Goodrich alleges that in doing so, Russell was acting within the scope of his employment.

Goodrich filed his complaint in March 2010, asserting subject matter jurisdiction under FELA and alleging an NIED claim and an IIED claim against the LIRR, Russell, and the unknown

---

[1] The allegations brought forward in the pretrial conference were not included in the plaintiff's complaint or in a proposed amended complaint and thus are ordinarily not properly considered in a motion to dismiss under Rule 12(b)(6). *See Reliance Ins. Co. v. PolyVision Corp.*, 474 F.3d 54, 57 (2d Cir. 2007). However, the LIRR did not object either below or in this appeal to the district court's consideration of these additional allegations amplifying those made in Goodrich's complaint and, in any event, the district court in no way relied on them in the decision below. *See id.* We include them here solely for background purposes.

individual John Doe "A." The LIRR filed a motion to dismiss with respect to the claims against it, arguing that to state a claim either for NIED or for IIED under FELA, Goodrich was required to satisfy the "zone of danger" test by alleging that he had either sustained a physical impact or been placed in immediate risk of physical harm by the conduct of the LIRR or its agents. Goodrich subsequently withdrew his NIED claim, acknowledging the need to satisfy the zone of danger test in that context, but contested the need to satisfy the same test to bring an IIED claim.

The district court concluded that the zone of danger test was applicable to IIED claims brought under FELA, granting LIRR's motion to dismiss on that basis. Although the individual defendants did not appear before the district court — according to the LIRR, Russell had not been served with a summons and complaint in this proceeding, while the other individual remained unidentified — the district court dismissed the action as to them as well, on the ground that a FELA action can only be brought against a "common carrier by railroad" and not an individual.

This appeal followed.


## DISCUSSION

### I. Standard of Review

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

### II. Applicability of the Zone of Danger Test to IIED Claims Brought Under FELA

The sole question presented by this appeal is whether the zone of danger test applies to IIED

claims brought under FELA. We begin with the text of the statute. FELA provides in relevant part that:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. On its face, the statute offers little reason to conclude that its coverage extends to claims for the intentional infliction of emotional distress, in that the statute creates liability for the "negligence" of a common carrier by railroad resulting in "injury or death" to a worker. The Supreme Court, however, has "recognized generally that the FELA is a broad remedial statute, and ha[s] adopted a 'standard of liberal construction in order to accomplish [Congress'] objects' " in enacting it. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987) (second alteration in original) (quoting *Urie v. Thompson*, 337 U.S. 163, 180 (1949)). Of particular relevance to this case, despite the fact that FELA's text refers to injuries caused by a railroad's "negligence," the statute has long been understood to recognize causes of action for some intentional torts like battery as well. *See id.* at 562 n.8 (citing, *inter alia*, *Jamison v. Encarnacion*, 281 U.S. 635 (1930)); *see also Higgins v. Metro-North R.R. Co.*, 318 F.3d 422, 425 (2d Cir. 2003) (citing *Davis v. Green*, 260 U.S. 349 (1922), and *Harrison v. Mo. Pac. R.R. Co.*, 372 U.S. 248 (1963)).

The Supreme Court has only more recently addressed the question whether FELA, through its use of the phrase "injury or death," provides for recovery not only for physical but also purely emotional harms. In *Buell*, confronting for the first time the question whether a purely emotional injury is cognizable under FELA, the Court noted that the question "may not be susceptible to an all-inclusive 'yes' or 'no' answer." 480 U.S. 570. It found the factual record in the case before it

5

insufficiently developed to allow it to come to a conclusion, vacating the lower court's determination that such harms were cognizable and remanding for further proceedings. *See id.*

In *Gottshall*, the Supreme Court returned to the issue, addressing in particular the question whether and to what extent a claim for *negligent* infliction of emotional distress is cognizable under FELA. *See* 512 U.S. at 541. The Court structured its analysis into two inquiries. First, it considered "FELA itself, its purposes and background and the construction [the Court has] given it over the years." *Id.* Second, "because 'FELA jurisprudence gleans guidance from common-law developments,'" the Court considered the common law treatment of the NIED cause of action. *See id.* at 541-42 (quoting *Buell*, 480 U.S. at 568).

With respect to the first inquiry, the Court noted that the statutory purpose of FELA is clear: "when Congress enacted FELA in 1908, its 'attention was focused primarily upon injuries and death resulting from accidents on interstate railroads.'" *Id.* at 542 (quoting *Urie*, 337 U.S. at 181). Under these circumstances, "[c]ognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year," *id.*, Congress sought through FELA to "d[o] away with several common-law tort defenses that had effectively barred recovery by injured workers," thereby allowing injured workers to bring claims against their railroad employers more easily, *id.*

The Court then proceeded to the second inquiry, the relevant common law treatment of NIED claims, noting that "although common-law principles are not necessarily dispositive of questions arising under FELA, unless they are expressly rejected in the text of the statute, they are entitled to great weight in our analysis." *Id.* at 544. As an initial matter, it held that NIED claims could be brought under FELA, given the wide recognition of the claim in some form by many American jurisdictions at the time FELA was passed, its near-universal recognition by the States at present,

6

and the traditionally broad interpretation given to the term "injury" in the statute. *Id.* at 549-50.

Having recognized NIED claims as cognizable under FELA, the Court next adopted the zone of danger test to define the scope of the duty FELA places on employers to avoid imposing emotional distress on their employees. Assessing three common-law tests for limiting liability for NIED claims, the Court made clear that it was adopting the test that "best reconciles the concerns of the common law with the principles underlying our FELA jurisprudence." *Id.* at 554. The zone of danger test, the Court said, was "well established" when FELA was passed in 1908, *id.* at 554, is still presently in use in many states, *id.* at 555, and is "consistent with FELA's central focus on physical perils," *id.* "Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not." *Id.* at 556. In rejecting the alternative "relative bystander" test now widely used by many American jurisdictions, the Court noted that the test developed several decades after FELA's enactment, such that it "lacks historical support," *id.* at 556, and that in any event the Court "discern[ed] from FELA and its emphasis on protecting employees from physical harms no basis to extend recovery to bystanders outside the zone of danger," *id.* at 556-57. Thus, under the zone of danger test adopted in *Gottshall*, recovery under FELA for an NIED claim is limited to "those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of a physical harm by that conduct." *Id.* at 547-48.

The zone of danger test was refined in *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1997). In *Buckley*, the Supreme Court had to decide whether a railroad employee's exposure to asbestos, resulting in alleged emotional distress but no symptoms of illness at the time of the suit, constituted a "physical impact" meeting the requirements of the *Gottshall* zone of danger

7

test. 521 U.S. at 428-29. The Court held that such exposure did *not* constitute a physical impact "unless, and until, [the railroad worker] manifests symptoms of a disease." *Id.* at 427. In rejecting a more expansive reading of the test, the Court noted that its reading was consistent with the general common law understanding of the zone of danger test in similar contexts, with FELA's focus on physical harms, and with *Gotshall*'s use of the term "physical impact," which "do[es] not encompass every form of 'physical contact.'" *See id.* at 430-33. Moreover, the Court noted that the "general policy reasons" cited in *Gottshall* as common-law rationales for restricting claims for recovery for emotional harm — "(a) [the] special 'difficult[y] for judges and juries' in separating valid, important claims from those that are invalid or 'trivial'; (b) [the] threat of 'unlimited and unpredictable liability'; and (c) the 'potential for a flood' of comparatively unimportant, or 'trivial,' claims," *id.* at 433 (alteration in original; internal citations omitted) (quoting *Gottshall*, 512 U.S. at 557) — also "militate against an expansive definition of 'physical impact' here." *Id.* In light of these considerations, the Court rejected the notion that a claim for emotional harm could be brought under FELA in the circumstances alleged by the plaintiff in *Buckley*. *See id.* at 436.[2]

After *Gottshall* and *Buckley*, we examined in *Higgins* whether an IIED claim is cognizable under FELA and concluded that it was, reasoning that "[b]ecause intentional torts are recognized under FELA and claims for solely emotional injury are also recognized, . . . claims of intentional infliction of emotional distress can be brought under FELA." 318 F.3d at 425 (internal citations

---

[2] In *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135 (2003), the Supreme Court further clarified the rule set out by *Buckley*, noting that when an employee who had been exposed to asbestos in fact *has* developed asbestosis, a cognizable injury under FELA, that employee can then recover for his or her fear of cancer as part of the pain and suffering resulting from this physical injury without being subject to the zone of danger test of *Gottshall* and *Metro-North*. *See id.* at 141, 148-49.

omitted). The majority in *Higgins* expressly declined, however, to decide whether the zone of danger test applied by the Supreme Court in *Gottshall* was also applicable in FELA cases raising IIED claims, as the common-law requirement that an IIED claim be based on extreme and outrageous conduct was sufficient to dispose of the case before it. *See id.* at 425 n.1.

Concurring in the result, then-Judge Sotomayor concluded that the zone of danger test *did* apply and would have decided the case on that basis. In doing so, she noted that while the Supreme Court in *Gottshall* considered an NIED claim, its discussion extended broadly to the types of *injuries* compensable under FELA. *See id.* at 430 (Sotomayor, *J.*, concurring in the judgment). Analyzing the Court's decisions in *Gottshall* and *Buckley*, Judge Sotomayor reasoned that, while the common law's focus on the extreme or outrageous nature of a defendant's conduct may adequately guarantee that a claim of emotional distress is genuine, "this approach takes the focus away from the core concern of FELA as described in both *Gottshall* and *Buckley*: that employees must suffer some kind of physical harm, impact, or invasion before they may recover under the Act." *Id.* at 431-32.

As an initial matter, we agree with the concurring opinion in *Higgins* that *Gottshall* and *Buckley* are highly relevant to the zone of danger test's applicability in the IIED context, even though both decisions dealt with NIED claims. As the concurrence in *Higgins* notes, the Supreme Court in *Gottshall* focused its analysis on the nature of the injury, stating that "[t]he injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Higgins*, 318 F.3d at 430-31 (Sotomayor, *J.*, concurring in the judgment) (quoting *Gottshall*, 512 U.S. at 544); *see also Smith v. Union Pacific R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir. 2000) ("A close reading of [*Gottshall*] reveals that the Court focused on whether

9

emotional injuries were generally compensable under FELA, rather than upon the specific cause of action.").  Language in the Supreme Court's most recent discussion of the zone of danger test for NIED claims in *Norfolk & Western Railway Co. v. Ayers*, 538 U.S. 135 (2003), a decision that followed *Higgins*, only reinforces our conclusion that the focus should be on the *injury* involved: "In sum, our decisions in *Gottshall* and [*Buckley*] describe two categories: Stand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test; and emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted." *Id.* at 147.

We also agree with the concurrence in *Higgins* that, in analyzing the question here, we properly begin with the understanding that FELA's "core concern," *see Higgins*, 318 F.3d at 431 (Sotomayor, *J.*, concurring in the judgment), is *physical* harm, impact, or invasion.  As the Supreme Court noted approvingly in *Gottshall,* the Seventh Circuit has observed that "FELA was (and is) aimed at ensuring 'the security of the person from *physical* invasions or menaces.'"  *Gottshall*, 512 U.S. at 555-56 (emphasis added) (quoting *Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 813 (7th Cir. 1985)).  The Seventh Circuit went on to hold in the same case that even in the intentional tort context, "FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact," *Lancaster*, 773 F.3d at 813; *see also Ray v. Consol. Rail Corp.*, 938 F.2d 704, 705 (7th Cir. 1991) (reaffirming *Lancaster*).  Indeed, our understanding of FELA is shared by all our sister Circuits that have expressly considered the extent to which claims based on emotional distress may be brought under the Act.  *See Adkins v. Seaboard Sys. R.R.*, 821 F.2d 340, 341-42 (6th Cir. 1987) (per curiam) ("Although *Buell* notes that the FELA has been held to apply to some intentional torts, the FELA has not been applied to any

10

intentional torts lacking any physical dimension such as assault. . . . [W]e have held that a claim for intentional infliction of emotional distress is not cognizable under the FELA." (internal citations omitted)); *cf. Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1082 (9th Cir. 2003) ("In light of the historical interpretation of FELA as intended to compensate for injury caused by a physical phenomenon, defamation is not properly pled as a FELA claim.").

It is true that the common law does not currently impose a zone of danger test on IIED claims. The Restatement (Second) of Torts defines the tort in these terms: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (1965). This approach has been followed by most, if not all, American jurisdictions, *see* Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 45, Reporter's Note, cmt. a (Tentative Draft No. 5, 2007) (collecting cases), albeit not without reservation in some cases, *see, e.g.*, *Supervalu, Inc. v. Johnson*, 276 Va. 356, 370 (2008) ("[T]he tort of intentional infliction of emotional distress is 'not favored' in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury."). Courts have noted that the Restatement's "extreme and outrageous" conduct requirement "serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Holwell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993); *see also* Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 45, cmt. a (Tentative Draft No. 5, 2007) ("Courts have played an especially critical role in cabining [the IIED tort] by requiring 'extreme and outrageous' conduct and 'severe' emotional disturbance. A great deal of conduct may

11

cause emotional disturbance, but the requisite conduct for this claim — extreme and outrageous — is a very small slice of human behavior, and the requirement that the resulting harm be severe further limits claims.").

Our inquiry does not end with the present day state of the common law on this question, however. Under *Gottshall*, we are also compelled to "[c]onsider[] the question 'in the appropriate historical context,'" 512 U.S. at 555 (quoting *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 337 (1988)), requiring here an assessment of the treatment of claims for IIED at common law at the time of FELA's passage in 1908, *cf. id.* at 556 (noting that the "relative bystander" test for NIED claims "was not developed until 60 years after FELA's enactment, and therefore lacks historical support").

We find highly significant – though not dispositive *per se*, *see Nelson v. Metro-North Commuter R.R.*, 235 F.3d 101, 107-10 (2d Cir. 2000) – that the tort of IIED or outrage was in a nascent stage at the time of FELA's passage. The Restatement (First) of Torts, published in 1934, stated categorically that "conduct which is intended or which though not so intended is likely to cause only a mental or emotional disturbance to another does not subject the actor to liability (a) for emotional distress resulting therefrom or (b) for bodily harm unexpectedly resulting from such disturbance." *Id.* § 46.[3] As Professor William Prosser, arguing in 1939 for the recognition of a new tort of "intentional infliction of mental suffering," described the situation:

> [T]he law has been reluctant, and very slow indeed, to accept the interest in peace of mind as entitled to independent legal protection. This has been true even where the invasion has been an intentional one. It is not until comparatively recent years that there has been anything like a general admission that the infliction of mental distress, standing alone, may ever serve as the basis of an action. In this respect the law is clearly in a process of growth, the ultimate limits of which must be as yet only a matter of conjecture.

---

[3] The Restatement did recognize traditional exceptions to this rule like the tort of assault, *id.* §§ 21-34, and the liability of common carriers to their customers for insults by employees, *id.* § 48.

12

William L. Prosser, *Intentional Infliction of Mental Suffering: A New Tort*, 37 Mich. L. Rev. 874, 874 (1939); *see also* Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv. L. Rev. 1033, 1035 (1936). Granted, Professors Prosser and Magruder forcefully attacked the Restatement view that no recovery could be obtained for the intentional infliction of emotional distress. But in assessing decided cases over 25 years after the FELA's enactment, they could identify at most a "rule which seems to be emerging . . . that there is liability only for conduct exceeding all bounds which could be tolerated by society, of a nature especially calculated to cause mental damage of a very serious kind." Prosser, *supra*, at 889; *see also* Magruder, *supra*, at 1058 (suggesting "the gradual emergence of a broad principle somewhat to this effect: that one who, without just cause or excuse, and beyond all the bounds of decency, purposely causes a disturbance of another's mental and emotional tranquillity of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue"); William L. Prosser, *Insult and Outrage*, 44 Cal. L. Rev. 40, 43 (1956) ("[S]omewhere around 1930 it began to be generally recognized that the intentional infliction of mental disturbance, at least by extreme and outrageous conduct, could be a cause of action in itself.").

Reflective of the still undetermined contours of this emerging cause of action, when the tort of intentional infliction of emotional distress was first added to the Restatement in a 1948 Supplement to the Restatement (First) of Torts, the provision simply stated that "[o]ne who, without a privilege to do so, intentionally causes severe emotional distress to another is liable . . . for such emotional distress." Restatement (First) of Torts, § 46 (Supp. 1948). It was not until the Restatement (Second) of Torts, published in 1965, that the cause of action assumed the form in which it was widely adopted and persists at present, its scope cabined only by the requirements that

13

the defendant's underlying conduct be "extreme and outrageous" and the resulting emotional distress "severe." *See* Restatement (Second) of Torts § 46 (1965).

We of course give "great weight" to common law principles in deciding claims brought under FELA, unless they are expressly rejected in the text of the statute. *See Gottshall*, 512 U.S. at 544. At the same time, they are "not necessarily dispositive of questions arising under FELA," *id.*, and we must "reconcile[] the concerns of the common law with the principles underlying our FELA jurisprudence," *id.* at 554. At present, the common law in almost all American jurisdictions has largely settled on the formulation of the IIED tort put forward by the Restatement in 1965, using the outrageousness of the conduct and the severity of the injury to address concerns regarding the triviality or authenticity of claims that may be brought under its heading. Nevertheless, we agree with then-Judge Sotomayor in *Higgins* that this approach "takes the focus away from the core concern of FELA as described in both *Gottshall* and *Buckley*: that employees must suffer some kind of physical harm, impact, or invasion before they may recover under the Act." *Higgins*, 318 F.3d at 431-32 (Sotomayor, *J.*, concurring in the judgment).

Neither FELA's terms nor any court decision of which we are aware supports expanding the injuries for which recovery is available under FELA to include those occurring outside a zone of physical danger. The IIED claim is a tort unbounded by any connection to the dangers originally prompting Congress to protect railroad workers through enactment of FELA — a tort, in the words of the New York Court of Appeals, "as limitless as the human capacity for cruelty." *Holwell*, 81 N.Y.2d at 122. In contrast, as the Supreme Court has stated, "an emotional injury constitutes 'injury' resulting from the employer's 'negligence' for purposes of FELA only if it would be compensable under the terms of the zone of danger test." *Gottshall*, 512 U.S. at 555. The fact that an "injury" of this type results from an intentional act for which the employer is responsible rather

14

than from "mere inadvertence or carelessness" does not excuse the employer from liability under FELA. *See Jamison*, 281 U.S. at 641. We see no reason, however, why the same definition of injury should not apply in the NIED and IIED contexts.

Goodrich contends that applying the zone of danger test in the IIED context will have the effect either of precluding recovery for otherwise meritorious IIED claims — perhaps limiting the successful claims to those most like the traditional tort of assault — or of channeling many such IIED actions into NIED claims instead, where the common law does not require that the underlying conduct of which a plaintiff complains be extreme or outrageous.[4] Neither contention alters our conclusion here. As then-Judge Sotomayor noted in *Higgins*, the fact that recognizing the applicability of the zone of danger test to this type of claim may preclude the bringing of some otherwise meritorious IIED claims under the aegis of FELA does not address, much less answer, the question whether the zone of danger test is applicable: "While I recognize that this may preclude recovery for purely emotional harm even where the conduct alleged is extreme and outrageous, this is not a sufficient basis . . . to conclude that the zone of danger test does not apply." *Higgins*, 318 F.3d at 432 n.5 (Sotomayor, *J.*, concurring in the judgment). To the extent that some IIED claims may be brought as NIED claims due to the "extreme and outrageous" conduct requirement applicable to IIED claims, moreover, this is a result of the Court's decision in *Higgins*, not the decision today. The question whether a FELA plaintiff who satisfies the zone of danger test and asserts an IIED claim must also satisfy the "extreme and outrageous" conduct requirement is simply

[4] We note that with respect to the argument that the tort of IIED, when delimited by the zone of danger test, mirrors the traditional tort of assault, this Circuit has observed that the full extent of the phrase "immediate risk of physical harm" in the Supreme Court's formulation of the zone of danger test is not entirely settled. *See Nelson v. Metro-North Commuter R.R.*, 235 F.3d 101, 110 (2d Cir. 2000). Because Goodrich specifically disclaims any fear of imminent bodily harm in this case, this appeal presents us with no occasion to explore the boundaries of this test.

not before this panel. The issue before us is whether the zone of danger test applies. In light of FELA's overall focus on physical injuries, the decisions of our sister circuits, the dearth of decisions holding that IIED claims may be brought under FELA without satisfying the zone of danger test, and the unsettled state of the common law on this point at the time of FELA's enactment, we hold that the zone of danger test applies to IIED claims brought under FELA. Because Goodrich failed to allege that he "sustain[ed] a physical impact" as a result of the defendants' alleged conduct or was "placed in immediate risk of physical harm by that conduct," *Gottshall*, 512 U.S. at 547-48, we affirm the district court's dismissal of his complaint.

**III. Leave to Amend**

Goodrich argues that, even if we conclude that the zone of danger test applies to the claim at issue in this case, the judgment here should nevertheless be vacated and he should be granted leave to file and serve an amended complaint. Under Rule 15 of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, as this Court has noted, a request to replead should be denied in the event that repleading would be futile. *See Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007). Here, Goodrich "readily concedes that he was never placed in fear of imminent bodily harm, nor did he ever suffer any physical impact." Plaintiff-Appellant's Br. at 2. In light of this concession and without any showing that the deficiencies in the complaint could be cured, we must conclude that repleading would be futile. We therefore decline to vacate the district court's judgment on this ground.

**CONCLUSION**

For all of the foregoing reasons, the judgment of the district court is therefore **AFFIRMED**.